THEODORE F. REED, Appellant, v. PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY of New York, Respondent, Impleaded with BENJAMIN F. REED and Others, Appellants.

*Procedure, where in an equity case the court changes its mind after receiving a verdict and before making its decision — proof that a beneficiary in a life insurance policy is a creditor — fraud, when not a defense.*

Where the trial court, after submitting specific questions of fact to a jury, treats the action as one in equity, triable before the court itself, and confirms the findings of the jury, and subsequently, between the time of the trial before the jury and its final decision of the case, changes its view as to the law applicable thereto, it should set aside the verdict and either submit the issues to a new jury for determination, or proceed to determine the questions of fact uninfluenced by the findings of the jury.

A beneficiary of a policy of life insurance, stated to be a creditor of the insured, establishes his claim as a creditor by proof that he had advanced money for premiums on other policies of insurance which the insured had agreed to repay.

The fact that the transaction, relating to the payment of the premiums, was in some respect fraudulent as to the children of the insured, does not relieve the insured from his obligation contained in an agreement under seal to pay such advances, nor the insurance company from its liability to make good its contract of insurance.

APPEAL by the plaintiff, Theodore F. Reed, and by the defendants Benjamin F. Reed and others, from a judgment of the Supreme Court in favor of the defendant, the Provident Savings Life Assurance Society of New York, entered in the office of the clerk of the

county of Rockland on the 15th day of July, 1897, upon the decision of the court rendered after a trial at the Rockland Trial Term, the verdict of a jury having previously been taken upon certain issues submitted to them; also an appeal by the plaintiff, Theodore F. Reed, from an order of the Supreme Court, made at the Rockland Special Term and entered in the office of the clerk of the county of Rockland on the 18th day of December, 1897, denying the plaintiff's motion for a new trial made upon the ground of newly-discovered evidence.

*E. F. Bullard* and *W. H. Van Steenbergh*, for the plaintiff, appellant.

*George Richards*, for Benjamin F. Reed and others, defendants, appellants.

*William S. Maddox* [ *William T. Gilbert* with him on the brief], for the Provident Savings Life Assurance Society, defendant, respondent.

CULLEN, J. :

On June 12, 1889, upon the application of Benjamin F. Reed, the defendant, the Provident Savings Life Assurance Society of New York, insured the life of said Reed, in the sum of $10,000, payable to the plaintiff, Theodore F. Reed, a creditor of said insured. In the application for the policy, and which under the contract forms part of it, the deceased stated that the relation the plaintiff bore to him was that of creditor. The plaintiff paid all the premiums on the policy. The insured died on February 27, 1896. The plaintiff submitted proofs of death; and the defendant society refusing to pay, he thereafter brought this action to recover the amount of the policy. In his complaint he alleged that at the time of obtaining the policy he was a creditor of the deceased in a sum exceeding $8,000. The defendant society answered, denying any knowledge or information sufficient to form a belief as to the allegation that the plaintiff was a creditor of Reed. It also put in issue the sufficiency of the proofs of loss. It alleged a forfeiture of the policy by the failure to pay the last premium. As a further defense it alleged that the plaintiff had not and never had any right or interest in or under the policy; that the children

and heirs at law of the said insured claimed to be entitled to any moneys due on the policy; that the plaintiff and the insured in 1887 entered into a written contract whereby it was agreed that, in consideration of the plaintiff being made the beneficiary in a policy of $5,000 upon the life of said Reed, the plaintiff was to procure other and further insurance upon the life of said Reed in the sum of $20,000 for the benefit of the children of said Reed, of which additional insurance the policy in suit was to be a part; but that the plaintiff, contrary to the terms of his agreement and in fraud of the rights of said children, procured the policy in suit to be issued to him as a creditor; that in fact he was not a creditor, but by the agreement was to be paid only such sums of money as he might pay on account of the insurance; that the contract, therefore, was a mere wager on the part of the plaintiff and void. While the action was thus pending the children of Reed applied to intervene in it. The application was granted against the plaintiff's resistance, and they were made parties defendant. They served an answer on the plaintiff and on their co-defendant, the insurance company, setting forth with elaboration and detail an agreement between the plaintiff and their father to effect life insurance substantially of the same general character as alleged in the answer of the insurance company. They prayed, among other things, that it might be decreed that the money due on the policy was payable to them. The action was brought on for trial before the court and a jury, whereupon a triangular contest occurred. The plaintiff produced two notes aggregating $8,300, executed by the deceased about two years before the issuing of the policy. He also put in evidence an agreement under seal from the deceased to himself, dated October 10, 1887, whereby the deceased assigned to him certain life insurance policies, and agreed to refund and pay to him any sum or sums that he might pay for premiums, dues or assessments on such policies, with interest at the rate of ten per cent. The genuineness of these instruments was not denied, but for the defendants evidence was given tending to prove that at the time of giving the notes there was no indebtedness on the part of the deceased to the plaintiff, and that the notes were executed for the purpose of making the plaintiff appear as a creditor, while in reality he was not. Evidence was also given tending to show that in 1887 the plaintiff, the

deceased and his children entered into a written agreement whereby the plaintiff was to obtain insurance on the life of the deceased to the extent of $25,000 for the benefit of such children; that the plaintiff was to pay all the premiums as they might accrue, and out of the insurance money, when it should become payable, he should be repaid the amount of his advances, with interest at ten per cent (the legal rate in Michigan) and a bonus of $5,000, the remainder of the insurance moneys to go to the defendants. The agreement was not produced, it being claimed that it was destroyed by a fire in which the dwelling of the defendants Reed was burned up. The evidence does not give the exact phraseology of the contract, but only its effect, and this, in some respects, in rather general terms. A witness stated that by the agreement a policy for $5,000 was to be taken out in the name of the plaintiff, and $20,000 in the name of the four children; that the premiums were to be paid by the plaintiff, and he was to have them back with legal interest on the same. Many letters of the plaintiff were produced, which undoubtedly tended to show that the insurance, at least in some of the companies, had been effected under some kind of an arrangement with the deceased, by which the children of the latter were to share in its proceeds. The insurance company's defenses of non-payment of premium and insufficiency of the proofs of loss seem either to have been abandoned on the trial or disposed of adversely to that defendant. The contest between the plaintiff and the Reed children as to the *bona fide* character of the notes, and the existence of the alleged agreement under which the insurance was effected, was strenuously maintained. At the conclusion of the evidence the court did not ask of the jury any general verdict, nor submit to them the rights of the parties to a recovery. It directed the jury to answer three questions, as follows:

*First.* Do the promissory notes in evidence for $8,300 represent a valid indebtedness actually existing on the day of their dates in favor of the plaintiff against Benjamin F. Reed?

*Second.* Was the insurance policy in question procured in pursuance of an agreement between the plaintiff and Benjamin F. Reed to secure either the payment of said notes or the debt represented by them?

*Third.* Was the insurance policy in question procured in pursu-

ance of an agreement between the plaintiff and Benjamin F. Reed and the latter's children for the benefit of such children, after paying the plaintiff a bonus of $5,000, and repaying him all premiums advanced and interest?

In submitting these questions to the jury the court thus commenced its charge: "The real contest, gentlemen, in this case, is between the plaintiff, who is concededly the nephew of the deceased, and those of the defendants who are the children of the deceased; that is, between Theodore F. Reed, the plaintiff, and the three or four men and the young woman who have been referred to by the counsel on all sides as 'the Reed children,' the insurance company, the defendant appearing simply, as the case now stands, and presenting their defense that if this policy was taken out by any fraudulent collusion, they are not liable to pay it; or, if the proofs of loss, proofs of death as they have been called, are imperfect, that then they are not liable to pay in this action, because the action has been prematurely brought; so that so far as regards the defendant, the insurance company, I say to you that there is no defense on their behalf to this action unless you shall find a negative answer to all the questions which I intend to submit to you, and in that case their defense will be disposed of by the court."

The remainder of the charge dealt with the issues in conflict as being wholly between the plaintiff and the defendants the Reed children. It is quite evident that the court assumed, and the jury was led to believe, that the insurance company would have to pay the amount of the policy, and the only question was whether the plaintiff or the defendants Reed should receive its proceeds. At the close of the charge the counsel for the insurance company excepted to the court's statement that the real contest was between the plaintiff and the Reed children, and the statement that the company had no defense unless fraud was shown; whereupon the court replied: "That only means so far as the jury is concerned. I do not mean to exclude your equitable defenses or any defense." The jury returned a verdict answering the first and second questions no, and the third question yes. Subsequent to the rendering of the verdict a hearing was had before the court, but no other evidence was taken. Thereupon the court, treating the action substantially as one in equity, triable before itself, confirmed the findings of the jury and

rendered a decision in favor of the defendant insurance company, on the ground that the plaintiff was not a creditor and, therefore, the contract of insurance was void. After the return of the verdict the plaintiff moved to set it aside, and for a new trial. He subsequently moved to set the judgment aside on the ground of newly-discovered evidence. Both these applications were denied, and from the orders denying them the plaintiff appeals.

The course adopted in the trial of this case was peculiar, but no objection seems to have been taken at any time by the parties. The result also has been peculiar. While the plaintiff and the defendants Reed were fighting for the prize, the defendant insurance company seems to have successfully run away with it. This result is not entirely unknown in business transactions, but is rare in lawsuits. It may not afford sufficient ground to reverse this judgment, but at least it prevents us from paying too absolute a deference to the finding of the jury. It is true that the jury should have passed on the questions submitted to them honestly, according as the evidence carried conviction, and without regard to the consideration whether the effect of its verdict was to favor the insurance company or the claimants. Therefore, all arguments as to the effect of their verdict might have have been properly excluded from their consideration. But if the jury was to have been instructed on the subject, it should have been instructed correctly. Doubtless, the difficulty has proceeded from the fact that the learned trial court changed its view of the law between the time of the trial before the jury and its final decision of the cause. The learned court was entirely right in refusing to adhere to a view it had formerly expressed after being convinced that that view was incorrect. But we are inclined to the opinion that in such case it would have been fairer to the parties to have set aside the verdict, and either to have submitted the issues to a new jury for determination or to have proceeded to determine the questions of fact uninfluenced by the findings of the jury. As the court rendered a decision upon which the judgment was entered, we think we should review this judgment solely on the basis of that decision.

We assume that this insurance is to be regarded as an insurance effected by the plaintiff on the life of the deceased, and not as a contract between the insured and the deceased himself. (*Rawls v. American Mutual Life Ins. Co.*, 27 N. Y. 262.) To enable the plain-

tiff to recover it was, therefore, necessary that he should prove an interest in the life of the insured. (*Ruse* v. *The Mutual Benefit Life Ins. Co.*, 23 N. Y. 516.)   We do not understand that the later authorities in this State have overruled these earlier decisions.   It is true that it is now the settled law in this State, as against the rule that obtains in some other States and in the Federal courts, that a policy of life insurance, effected by a person on his own life, is subject' to assignment to the same extent as any other chose in action, and that the assignee can recover the full amount whether he has any interest in the life of the insured or not. (*Valton* v. *The National Fund Life Assurance Company*, 20 N. Y. 32; *Olmsted* v. *Keyes*, 85 id. 593.)   It would seem, therefore, that while a policy of insurance payable to a third party having no interest in the life of the insured is void, the same result may be legally accomplished by having the contract run in favor of the insured, and by the insured then assigning the policy to the third party, this of course where the transaction is not a mere wager.   It is insisted, therefore, that as the thing itself is legal the manner of doing the thing is immaterial, and that the doctrine that the person to whom the insurance is payable must have some interest in the life of the assured should no longer prevail where the assured himself joins in the application. (Cooke Life Ins. § 58.)   There is, probably, no logical answer to this argument, but we do not feel authorized to give effect to it.   Such a doctrine can only safely be declared by the court of last resort.   The question is, therefore, presented whether the plaintiff had an insurable interest in the life of the deceased. The principle on which contracts of insurance without interest are held void in this State is, that they are wager or gambling contracts, for the doctrine enunciated by the Supreme Court of the United States (*Warnock* v. *Davis*, 104 U. S. 775), that it is against public policy that one should be interested in having another die, finds no support in our State.   When such a policy is condemned, it is avoided, not for the benefit of the insurance company, but solely in the interest of public morals.   Therefore, if the person to whom the insurance is payable, though having no personal interest in the life of the assured, effects the insurance under a valid agreement with other persons who have an insurable interest by which he is to hold the insurance moneys in trust for the benefit of such latter persons,

the policy is not a wager, either on the part of the payee or the ultimate beneficiaries, and we can see no reason why it should not be enforced. This, of course, has no reference to the objection that the applicant has misstated in his application the interest of the person to whom the insurance is payable; that objection being very different from the one that the contract is void as being effected without interest. We do not, however, feel it necessary to pursue this discussion further, as we think that on the undisputed evidence in the case the plaintiff was a creditor of the insured.

The agreement alleged by the defendants to have been made between the plaintiff and the deceased for obtaining a line of insurance was made in 1887. At that time, whether there was an agreement as alleged or not, three policies, one for $10,000 and the other two for $5,000 each, were taken out on the life of Benjamin F. Reed. These policies were payable to Reed or his personal representatives. On October 10, 1887, the policies were assigned by Benjamin F. Reed to the plaintiff, by an instrument under seal. In this assignment he covenanted and agreed to pay with interest to the plaintiff, his heirs or assigns, any and all sums he had paid, or might thereafter pay, as premiums, assessments or dues on such policies, the policies to stand as security for such payments. The defendant's policy was not taken out until two years subsequent to this time, and then it was taken out because two of the companies in which the insurance had been originally effected had failed. At the time of taking out the policy in the defendant company the plaintiff had advanced about $2,000 for premiums on the other policies. By this agreement the insured had agreed to repay these advances. They were not mere charges on the proceeds of the policies; they became and were personal debts of the insured. It follows that at the time of effecting the insurance in suit the plaintiff undoubtedly was a creditor of the insured for the amount advanced by him. Therefore, the policy was not void, nor was the statement in the application that the plaintiff was a creditor a misrepresentation.

Undoubtedly the principal contest at the trial was over the validity of the two promissory notes, amounting to $8,300, and this was the only item of indebtedness submitted to the jury for determina-

tion.   The respondent contends that at the trial no point was raised as to the indebtedness for premiums advanced on the other policies. Still the indebtedness was proved.   It was natural enough that no stress was laid on this point when the case was presented to the jury, for the court had practically ruled that one party or the other, either the plaintiff or the Reed children, was entitled to the insurance money.   The defendant company had practically been eliminated as a factor in the case.   The contest before the jury was solely as to the respective rights of the plaintiff and the Reed children. In that controversy the advances for insurance premiums were not in issue.   The Reed children conceded that the plaintiff was to be repaid that amount; the only questions were the genuineness of the debt on the notes and the existence of the agreement on which the insurance was effected.   The broad question whether the plaintiff was a creditor of the deceased was not submitted to the jury nor passed on by it.   The respondent further contends that by the agreement under which the jury has found that these insurances were effected, the advances by the plaintiff for premiums did not constitute a debt against the insured, and that the plaintiff's only right to repayment was to be out of the insurance moneys when collected.   Neither the finding of the jury nor the testimony of the witnesses is to this effect.   But however this may be, there is no evidence in the case to impeach the sealed agreement executed by the deceased, by which he promised to pay the plaintiff's advances.   It is said that the execution of this instrument and the assignment of the policies mentioned in it were in fraud of the rights of the children of the deceased.   We shall not enter into a discussion of this question. If the plaintiff did commit a fraud on the Reed children, that is immaterial so far as the liability of the defendant company to make good its contract is concerned.   Assuming that the transfer of these insurances was in fraud of the Reed children, there is not a suggestion nor a scintilla of evidence that any fraud was committed on the insured himself.   If the transaction was in some respects fraudulent as to the children, how can that relieve the insured from his sealed obligation to repay the advances?   It seems to us that on the undisputed evidence the plaintiff was a creditor of the deceased, and that the defendant insurance company was liable for the amount of the policy.   There must be a new trial in this action, for the insurance

company may establish its other defenses, and possibly even the one discussed by us.   Until the liability of that defendant is determined, it would be hardly profitable for us to examine the relative rights of the plaintiff and the defendants Reed to a fund which may never come into existence.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.   The appeal from the order denying plaintiff's motion for a new trial on newly-discovered evidence should be dismissed, without costs to either party.

All concurred, except BARTLETT, J., absent.

Judgment reversed and new trial granted, costs to abide the final, award of costs.

Appeal from order denying new trial on newly-discovered evidence dismissed, without costs to either party.