OPINION OF THE COURT
Simons, J.
Plaintiff insurer instituted this action against its policyholder, seeking a declaration that it is not obligated to pay $1.1 million in life insurance benefits because defendant had no insurable interest in the life of the decedent (see, Insurance Law § 3205 [b] [2]). Defendant contends that plaintiff is barred from asserting the invalidity of the policy because the statutory incontestability period expired before the insured died (see, Insurance Law § 3203 [a] [3]). The issue presented is whether the provisions of the incontestability clause may operate to bar plaintiff’s claim that the policy is unenforceable for lack of an insurable interest in the owner and beneficiary.
Plaintiffs argument follows traditional reasoning: life insurance policies issued to persons lacking an insurable interest in the life of the insured are void from inception because of statutory prohibitions and because they violate public policy concerns against wagering contracts. Since no contract exists, the expiration of the contestability period cannot operate to create one. To be distinguished are policies voidable because they constitute private wrongs against an individual insurance company — for example, policies issued upon fraudulent misrepresentations. In such cases, if the insurer fails to challenge the misrepresentation before expiration of the incontestability period, the obligation becomes absolute at maturity. *77 This case, plaintiff notes, involves a public injury; thus, no agreement of the parties may validate it and no court may enforce it. Plaintiff contends that the majority of jurisdictions accept this reasoning and, notwithstanding the expiration of the incontestability period, refuse to enforce life insurance contracts in which the policyholder has no insurable interest in the insured (see, 1A Appleman, Insurance Law and Practice § 337, at 416).
New York’s rule is otherwise, however. As generally interpreted, earlier decisions of this court hold that passage of the incontestability period bars the insurer from thereafter asserting the policyholder’s lack of an insurable interest (see, Columbian Natl. Life Ins. Co. v Hirsch, 267 NY 605; Wright v Mutual Benefit Life Assn., 118 NY 237). For the reasons that follow, we adhere to that rule.
I
In August 1984 Dean Salerno and defendant, who was not related to Salerno but was associated with him in the restaurant business, obtained an insurance policy on Salerno’s life. The policy named defendant as the owner and sole beneficiary. The two men required $850,000 to finance their restaurant operations and anticipated securing the loan with defendant’s assets. The policy on Salerno’s life was acquired to protect defendant in case of default. In December 1986 Salerno’s body was found in his automobile at the bottom of the State Barge Canal near Pittsford, New York. Five days later defendant claimed the proceeds of the policy.
Plaintiff instituted this action to establish the invalidity of the policy and defendant subsequently moved to dismiss the complaint urging that plaintiff’s claim was barred by the incontestability clause in the policy. The trial court denied defendant’s motion but on appeal the Appellate Division reversed and, without determining whether defendant had an insurable interest, granted him summary judgment declaring that plaintiff’s claim was barred after expiration of the incontestability period. We granted leave to appeal and now affirm the order of the Appellate Division.
II
Insurance contracts, by their nature, create rights and duties dependent on chance. When one insures his or her own *78 life, the wagering aspect is overridden by the recognized social utility of the contract as an investment to benefit others. When a third party insures another’s life, however, the contract does not have the same manifest utility and assumes more speculative characteristics which may subject it to the same general condemnation as wagers (see generally, NY Const, art I, § 9 [1]; General Obligations Law §§ 5-401, 5-411). Under those circumstances, the law requires the person procuring the insurance to have an interest in the insured’s continued life which is sufficient to negative the idea of speculation. Thus, our statute (Insurance Law § 3205 [b] [2]), and judicial decisions long before it (see, e.g., Ruse v Mutual Benefit Life Ins. Co., 23 NY 516; Rawls v American Mut. Life Ins. Co., 27 NY 282; see also, Reed v Provident Sav. Life Assur. Socy., 36 App Div 250, affd after trial 112 App Div 922, mod on other grounds 190 NY 111), provide that no one shall procure a policy upon the life of another unless the benefits are payable to the person insured, a representative or one having an insurable interest in the person insured.
An insurable interest may arise by reason of blood or legal relationship or a lawful and substantial economic interest in the continued life or health of the insured (Insurance Law § 3205 [a] [1] [A], [B]). It is distinguished from an interest which arises or is enhanced in value by the insured’s death or disablement. Plaintiff contends that in this case the loan was never consummated and thus defendant had no insurable interest in Salerno’s life.
Our statute requires, however, that all life insurance policies contain incontestability clauses providing that after a specified period of time the insurer’s conditional promise to pay benefits shall become absolute (Insurance Law § 3203 [a] [3]). The requirement rests on the legislative conviction that a policyholder should not indefinitely pay premiums to an insurer, under the belief that benefits are available, only to have it judicially determined after the death of the insured that the policy is void because of some defect existing at the time the policy was issued. The incontestability clause fixes the insurer’s promise to pay benefits upon maturity if the policy is in force for a period of two years during the life of the insured and the premiums have been paid. Defendant maintains that because more than two years elapsed after the policy was issued, without challenge to his rights, plaintiff is required to pay the proceeds to him and may not now attempt to prove he lacked an insurable interest in Salerno’s life.
*79 Ill
Plaintiff contends first that enforcement of this contract of insurance, notwithstanding the passage of the incontestability period, is contrary to the express provisions of the Insurance Law and public policy.
A
The provisions of the Insurance Law do not make life insurance contracts void if the policyholder lacks an insurable interest in the insured’s life. Section 3205 says that such contracts shall not be "procured” unless the benefits are payable to one having an insurable interest and are issued with the consent of the insured. The meaning of those words is best understood by looking at the statutory language which preceded them and by comparing it with the language of similar statutes.
The insurable interest statute which preceded section 3205 provided that no such contract should be "issued” (L 1892, ch 690, § 55; see generally, McKinney’s Cons Laws of NY, Book 27, Insurance Law §§ 3203, 3205, Historical Notes, at 19, 80). The wording of that earlier provision, clearly connoting voidness, was changed to its present language during the general recodification of the Insurance Law in 1939. It is clear from discussions in the Joint Legislative Committee considering recodification that the statutory change was intended to maintain the rule recognized by this court in Wright v Mutual Benefit Life Assn. (118 NY 237, supra). * The minutes establish that the committee members were familiar with the Wright *80 case, and the criticisms of it, and decided against legislative action to override it by removing a provision that would have done so.
Moreover, a comparison of the incontestability provision with other Insurance Law sections indicates that the language of section 3203 (a) (3) was not intended to make such policies void for want of an insurable interest in the policyholder. Thus, other sections provide that policies on the life of minors shall not be "issued” except in certain amounts (Insurance Law § 3207 [excess limits or additional policies are void, see, Flynn v Prudential Ins. Co., 207 NY 315]) and that policies on property are not "enforceable” except for the benefit of one having an insurable interest (Insurance Law § 3401). Such terms are traditionally used when policies are void at inception and enforcement is contrary to public policy (see, Restatement [Second] of Contracts, ch 8, topic 1, at 5). They differ substantially from the prohibition against "procurement” found in section 3205. Indeed, the Legislature has provided expressly that an incontestability clause does not bar a claim of lack of insurable interest with respect to certain accidental death policies (Insurance Law § 3216 [d] [1] [B] [i]), and if it had intended the same result for life insurance policies it could have stated so.
Finally, it should be noted that when the statute was recodified in 1939 a new provision was added enabling the person insured or his representative to recover proceeds paid to a policyholder without an insurable interest (see, Insurance Law § 3205 [b] [3]). Manifestly the relief granted by the provision contemplates that such policies, although improper, may be issued and enforced.
Thus, the legislative history, considered with the language of similar statutory provisions, leads us to conclude that nothing in the statutory scheme makes void ab initio policies acquired by one lacking an insurable interest or forecloses the *81 application of an incontestable clause to bar an insurer’s disclaimer of liability.
B
Nor do we find anything in the public policy of this State which militates against enforcement of the incontestability clause in these circumstances. Generally, parties may contract as they wish and the courts will enforce their agreements without passing on the substance of them. Their promises are unenforceable only when statute or public policy dictates that the interest in freedom to contract is outweighed by an overriding interest of society. Courts refuse to enforce contracts in such cases because they wish to discourage undesirable conduct by the parties or others and to avoid use of the judicial process to give effect to an unsavory transaction. Freedom of contract itself is deeply rooted in public policy, however, and therefore a decision to refrain from enforcing a particular agreement depends upon a balancing of the policy considerations against enforcement and those favoring the encouragement of transactions freely entered into by the parties.
The policy at issue in this case is the general public interest in preventing gambling and, in the case of life insurance contracts, of compromising public safety by furnishing a temptation to bring about the event upon which payment is conditioned to those who insure the lives of others.
The policy determination depends upon a balancing of society’s interest in enforcement of a particular provision in a contract, the incontestability clause in this case, against its interest in preventing gambling. In doing so, the court must consider the parties’ justified expectations, the forfeiture resulting from denial of enforcement and the public interest in enforcement of the particular provision. These considerations are weighed against the strength of the public policy, as manifested by statute and judicial decision, and the likelihood that denial of enforcement will further that policy (see generally, Restatement [Second] of Contracts § 178; Farnsworth, Contracts § 5.5). By “public policy” is meant the law of the State, whether found in the Constitution, statutes or decisions of the courts (see, Matter of Walker, 64 NY2d 354, 359).
In the case before us it is difficult to conclude that enforcement of the claim is contrary to public policy when the policy is not void ab initio under the statute, as we construe it, and *82 is enforceable against the insurance company under our prior decisions. Indeed, one of those decisions, the Wright case, has been the law of this State for almost 100 years without adverse consequences and, that being so, there would appear to be no need to reexamine the policy implications of the rule in depth. Moreover, the policy concerns at issue are also protected by the penal statutes of this State, decisions which prevent an individual from profiting from his or her own wrong (see, e.g., Riggs v Palmer, 115 NY 506) and section 3205 (b) (3) which permits the insured or a representative of the insured to recover proceeds paid to a policyholder without an insurable interest. In view of these general restraints the need for further deterrents in this area to advance public safety would appear marginal. Balanced against that need, such as it is, is our conclusion that a change in the rule would result in a forfeiture to defendant and an unnecessary advantage to plaintiff.
Under existing law, defendant could justifiably believe that if he paid the premiums and the two-year incontestability period elapsed without challenge to the policyholder’s insurable interest, the policy would be enforced. That was accepted law in New York at the time the policy was issued (see, Columbian Natl. Life Ins. Co. v Hirsch, 267 NY 605, supra; Wright v Mutual Benefit Life Assn., 118 NY 237, supra). Although plaintiff disputes the soundness of those decisions, and concededly they can be distinguished from the case at hand, that was the interpretation consistently applied to them. That being so, defendant should not be compelled to come forward now and prove his interest after the policy has been in effect for over two years and after decedent has died and is unable to help confirm the arrangement between the two men. The statute requires that the policyholder have an insurable interest in the life of decedent only at the time the contract was made (Insurance Law § 3205 [b] [2]; cf., § 3401 [insurable interest in property at time of loss required]) and to require evidence of insurable interest at this late date could not only impose an undue burden on the policyholder but also run counter to the policy considerations underlying incontestability requirements. Decedent consented to the policy’s issuance and plaintiff accepted the application on the strength of the representations contained in it. If it doubted defendant’s interest, the burden rested on it to investigate in a timely manner or ignore the matter at its peril. A failure to enforce the incontestability rule now would result in a forfeiture to *83 defendant (or to the deceased’s estate if the policyholder had no insurable interest [see, Insurance Law § 3205 (b) (3)]) after decedent’s death and an unnecessary advantage to plaintiff by enabling it to avoid a claim it previously accepted. This inequity may be avoided, and the public purpose underlying the insurable interest requirement implemented, by a rule which encourages the insurer to investigate the insurable interest of its policyholders promptly within the two-year period. Such investigations would not only eliminate "wagering” contracts but would do so promptly, thereby furthering the policy behind the provisions to the statute.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

 "mr. patterson: * * * But I would like to ask, are you in favor of the first part of it which says that the incontestable clause does not bar a defense of lack of insurability.
"mr. cook: We don’t care one way or another, because the cases are very few and far between where the company has asserted lack of insurable interest as a defense to a claim.
"mr. patterson: I do not regard this as a very serious provision.
"the chairman: I am not at all sure that I like that provision.
"mr. patterson: Well, I had some doubt but on account of the weight of authority in other states and because it was in accordance with the rules here laid down, — and I might say incidentally I got the suggestion from a professor in one of the law schools in this state and he felt very strongly that this should be the rule and that we should correct the dictum in that rule which was laid down in the case of Wright against the Mutual Benefit Life Association about 50 years ago, and that we should make a law of New York in conformity with what has been held in other states, namely, that *80 an illegal contract is always contestable, and some people in the Insurance Department felt that they ought not to be allowed to raise the question of lack of insurable interest after the payment of premiums for two years.
"the chairman: I am inclined to agree with that.
"mr. patterson: Well, I feel that it is not an important provision, and we can delete it.
"mr. cook: We would be perfectly satisfied to have it eliminated.
"the chairman: All right, Mr. Shepard.” (New York Legislature Joint Committee for Recodification of Insurance Law — meeting Nov. 16, 1938, at 405-406 [emphasis added]).