The LINCOLN NATIONAL LIFE
INSURANCE COMPANY,
Plaintiff Appellant,

v.

JOSEPH SCHLANGER 2006 INSUR-
ANCE TRUST and Freddie Jackowitz
and Abbe Roberts, Individually and as
administrators of the Estate of Joseph
Schlanger, Defendants Appellees.

C.A. No. 178, 2011.

Supreme Court of Delaware.

Submitted: Aug. 17, 2011.
Decided: Sept. 20, 2011.

David P. Primack and Joseph C. Schoell of Drinker Biddle & Reath LLP, Wilmington, Delaware. Of Counsel: Charles J. Vinicombe (argued) of Drinker Biddle & Reath LLP, Princeton, New Jersey; Stephen C. Baker, James S. Bainbridge, and Lawrence R. Scheetz, Jr. of Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania for appellant.

John E. James, David E. Moore and Michael B. Rush of Potter Anderson & Corroon LLP, Wilmington, Delaware. Of Counsel: John E. Failla (argued), Elise A. Yablonski and Nathan Lander of Proskauer Rose LLP, New York, New York; Lary Alan Rappaport of Proskauer Rose LLP, Los Angeles, California for appellees.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en banc.

STEELE, Chief Justice:

This is a proceeding, under Article IV, Section 11(8) of the Delaware Constitution and Supreme Court Rule 41, on a question of law certified to, and accepted by us, from the United States District Court for the District of Delaware. The certified questions arise from two similar cases—*Lincoln National Life Insurance Co. v. Joseph Schlanger 2006 Insurance Trust* (Schlanger) and *PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust* (Dawe).[1] In both cases, an insurer sought a judicial declaration that a life insurance policy was void as an illegal contract wagering on human life that accordingly lacks an insurable interest. The district court denied both motions to dismiss and certified three questions to the Supreme Court of Delaware concerning the incontestability provision required under 18 *Del. C.* § 2908 and the insurable interest requirement under 18 *Del. C.* § 2704.

### FACTUAL AND PROCEDURAL BACKGROUND

The Schlanger Trust is a Delaware statutory trust with its principal place of business in Delaware. On December 14, 2006, Lincoln National Life Insurance Company issued a $6 million life insurance policy on Joseph Schlanger's life to the Schlanger Trust. The policy contains an incontestability clause stating that "We [Lincoln] will not contest this policy after it has been in force during the Insured's lifetime for 2 years from the Issue Date." Schlanger died on January 21, 2009, more than two years after the policy's issue date. On February 13, 2009, the Schlanger Trust submitted a claim for the death benefit under the policy. Lincoln first contested the policy when it filed this action on July 10, 2009. These facts are undisputed and constitute the official record for our purposes.[2]

---

**1.** *The Lincoln National Life Insurance Company v. Joseph Schlanger 2006 Insurance Trust,* C.A. No. 09–506–BMS, 2010 WL 2898315 (D.Del. July 20, 2010) and *PHL Variable Insurance Trust v. Price Dawe 2006 Insurance Trust,* C.A. No. 10–964–BMS (D.Del. Nov. 12, 2010).

**2.** Supreme Court Rule 41(c)(iv), which concerns Certification of Questions of Law pro-

In its original complaint, Lincoln contends that the policy was never intended for legitimate insurance needs, but in reality was the product of a stranger originated life insurance ("STOLI") scheme promoted by GIII, a private investing entity. Lincoln alleges a multi-layered trust scheme that is identical in form to the arrangement described above in Dawe. The insurance company claims that the beneficiary of the Schlanger Trust was actually another trust, the Joseph Schlanger 2006 Family Trust. Although Schlanger himself was the beneficiary of the Family Trust, Lincoln contends that under the scheme, immediately upon issuance of the policy Schlanger sold his beneficial interest in the Family Trust to GIII, which paid all of the premiums. Lincoln asserts that the entire trust structure was intended to generate, and then conceal, a life insurance policy that would allow GIII, an investor with no insurable interest, to speculate on Schlanger's life. After filing a challenge to the policy in the United States District Court for the District of Delaware, the defendant Trust moved to dismiss the complaint, asserting that the policy's two-year contestability period barred Lincoln's claim. On July 20, 2010, the district court denied the Trust's motion and certified a single question to this Court, which we accepted.

## THE CERTIFIED QUESTION

■ The question presented is an issue of law which this Court decides *de novo*.[3]

1) Can a life insurer contest the validity of a life insurance policy based on a lack of insurable interest after expiration of the two-year contestability period set out in the policy as required by 18 *Del. C.* § 2908?[4]

## ANALYSIS

This certified question, shared by both *Dawe* and *Schlanger*, concerns whether an insurer may claim that a life insurance policy never came into existence, on the basis of a lack of insurable interest, where the challenge occurs after the insurance contract's mandatory contestability period expires. As certified by the district court in *Schlanger*:

> Can a life insurer contest the validity of a life insurance policy based on a lack of insurable interest after expiration of the two-year contestability period set out in the policy as required by 18 *Del. C.* § 2908?[5]

■ Our answer to the question is "YES." Consistent with the view of the majority of courts, we hold that a life insurance policy lacking an insurable interest is void as against public policy and thus never comes into force, making the incontestability provision inapplicable.

Lincoln and *amicus curiae* American Council of Life Insurers argue that we should side with the majority of courts and

---

vides that only those facts contained in the certification are actually part of the record. D.R.S.C. Rule 41(c)(iv) ("The certification as filed shall constitute the record."). Nevertheless, the additional allegations from the plaintiffs' pleadings are included below in order to provide better context.

3. *CA, Inc. v. AFSCME Employees Pension Plan*, 953 A.2d 227, 231 (Del.2008).

4. The *PHL Variable Insurance Trust v. Price Dawe 2006 Insurance Trust*, C.A. No. 10–964–

BMS (D.Del. Nov. 12, 2010) also certified the same basic question to this court. Therefore, the answer and analysis for both questions will be the same.

5. The district court in *Dawe* posed the question as, "Does Delaware law permit an insurer to challenge the validity of a life insurance policy based on a lack of insurable interest after the expiration of the two-year contestability period required by 18 *Del. C.* § 2908?"

hold that the expiration of a contractual contestability period mandated by the Delaware Insurance Code does not bar an insurer from contesting the validity of a life insurance policy based on a lack of insurable interest. They contend that under Delaware law, a life insurance policy without an insurable interest is nothing more than a wager on human life that is void as against public policy. As a result, the insurers assert, the incontestability provision does not bar their suits because the provision, which is but one component of the entire life insurance contract, never legally came into effect at all.

The defendant Schlanger Trust argues that we should side with the courts of New York and Michigan and hold that the incontestability provision of each life insurance contract bars plaintiffs' suits. They contend that the plain meaning of the pertinent provisions of the Insurance Code makes clear that these provisions bar all challenges to a life insurance policy's validity after the required contestability period expires. The defendants argue that the distinction between contracts void at the outset and those voidable at the option of the innocent party is irrelevant, and that life insurance policies in violation of Delaware's insurable interest requirement are not automatically void.

### A.  *Historical Background*

An incontestability clause is a contractual provision where the insurer agrees, af-

ter a policy has been in force for a given period of time, that it will not contest the policy based on misrepresentations in the application.[6] The insurance industry has used incontestability clauses for more than 100 years to encourage customers to purchase insurance.[7] Originating in England in the mid-nineteenth century, incontestability clauses were created as a marketing device to increase public trust in insurance companies.[8] Before incontestability clauses were introduced, insured's sometimes paid premiums for a long period of time only to have the insurer declare the contract void because of misrepresentations in the application.[9] These misrepresentations were often innocent, but the insured was deceased and unable to address the basis of the challenge.[10] Insurance companies therefore created the incontestability clause in order to address consumer uncertainty.

Incontestability clauses thus provide security in financial planning for the insured, while also providing an insurer a reasonable opportunity to investigate any misrepresentations in the application. These provisions essentially serve the same function as statutes of limitation and repose.[11] By the early twentieth century, the life insurance policies included incontestability clauses as a matter of industry practice.[12] Forty three states have adopted mandatory incontestability clauses relating to life insurance policies, while four states also have incontestability clauses relating to

**6.**  Bertram Harnett & Irving I. Lesnick, *The Law of Life and Health Insurance* § 5.07 (Matthew Bender, Rev. Ed.2010).

**7.**  Katherine Cooper, *Liar's Poker: The Effect of Incontestability Clauses After* Paul Revere Life Insurance Co. v. Haas, 1 Conn. Ins. L.J. 225, 228 (Spring 1995).

**8.**  Erin Wessling, *Contracts—Applying the Plain Language to Incontestability Clauses,* 27 Wm. Mitchell L.Rev. 1253, 1256 (2000).

**9.**  *Id.*

**10.**  *Id.*

**11.**  *See Penn Mut. Life Ins. Co. v. Oglesby,* 695 A.2d 1146, 1151 (Del.1997).

**12.**  Wessling, *Contracts—Applying the Plain Language to Incontestability Clauses, supra* note 8 at 1257.

other types of insurance.[13] Consequently, over the years, the clause has become a standard provision in most, if not all, life insurance contracts.[14]

### B. *Delaware Insurance Code*

The Delaware Insurance Code requires that all life insurance policies include an incontestability clause.[15] The statute in relevant part provides:

> There shall be a provision that the policy shall be incontestable after it has been *in force* during the lifetime of the insured for a period of not more than 2 years after its date of issue, except for (1) nonpayment of premiums, and (2) at the insurer's option, provisions relating to benefits in the event of total and permanent disability and provisions granting additional benefits specifically against death by accident or accidental means.[16]

Section 2917 of the Insurance Code affirms the class of challenges that are covered by a mandatory incontestability provision, but also lists certain challenges that are not precluded by this language:

> A clause in any policy of life insurance providing that such policy shall be incontestable after a specified period shall preclude only a contest of the *validity of the policy* and shall not preclude the assertion at any time of defenses based

upon provisions in the policy which exclude or restrict coverage, whether or not such restrictions or exclusions are excepted in such clause.[17]

█ The defendant trusts argue that the plain language of section 2917 makes clear that an incontestability clause precludes any challenge to the enforceability of a life insurance contract after the two year period. This argument ignores the fact that the Delaware General Assembly chose to implement its goals through a mandatory *contractual* term, as opposed to a direct ban on challenges to policy validity after a certain time. This creates an ambiguity in section 2917 surrounding the word "validity," a term whose plain meaning in a different context might apply to all types of challenges. Put simply, under the Delaware statute, the incontestability provision should be treated like any other contract term. That reading is supported by the plain language of section 2908, which states that "[t]here shall be a provision that the policy shall be incontestable after it has been *in force* during the lifetime of the insured for a period of not more than 2 years." These words make the incontestability period *directly contingent*, and predicated, upon the formation of a valid contract. That is the view of the majority of state courts that have considered this question.[18]

---

13. *Id.*

14. *Id.*

15. 18 *Del. C.* § 2908 (2011).

16. *Id.* (emphasis added).

17. 18 *Del. C.* § 2917 (emphasis added).

18. *See, e.g., Beard v. Am. Agency Life Ins. Co.,* 314 Md. 235, 550 A.2d 677, 689 (1988); *Wood v. New York Life Ins. Co.,* 255 Ga. 300, 336 S.E.2d 806, 811–12 (1985); *Commonwealth Life Ins. Co. v. George,* 248 Ala. 649, 28 So.2d

910, 912–14 (1947); *Henderson v. Life Ins. Co. of Va.,* 176 S.C. 100, 179 S.E. 680, 692 (1935); *Ludwinska v. John Hancock Mut. Life Ins. Co.,* 317 Pa. 577, 178 A. 28, 30 (1935); *Home Life Ins. Co. v. Masterson,* 180 Ark. 170, 21 S.W.2d 414, 417 (1929); *Bromley's Administrator v. Washington Life Ins. Co.,* 122 Ky. 402, 92 S.W. 17 (1906); *Harris v. Sovereign Camp Woodmen of the World,* 31 Ohio Law Abs. 317, 1940 WL 2917 (Ohio Ct.App.1940); *Goodwin v. Fed. Mut. Ins. Co.,* 180 So. 662, 665 (La.Ct.App.1938); *Charbonnier v. Chicago Nat'l Life Ins. Co.,* 266 Ill.App. 412 (Ill.App.Ct. 1932). *But see, New England Mut. Life Ins. Co. v. Caruso,* 73 N.Y.2d 74, 538 N.Y.S.2d

## C. *Distinguishing between void and voidable contracts*

■ As with all contracts, fraud in the inducement renders a life insurance policy voidable at the election of the innocent party.[19] Certain agreements, however, are so egregiously flawed that they are void at the outset. Those arrangements are often referred to as being void *ab initio,* Latin for "from the beginning." A court may never enforce agreements void *ab initio,* no matter what the intentions of the parties may be. The United States District Court for the District of Delaware succinctly explained this basic contract doctrine in the context of fraud:

> Under the common law of contracts, there is a distinction between fraud in the inducement and fraud in the "factum," or execution. Fraud in the factum occurs when a party makes a misrepresentation that is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect. If the misrepresentation is of this type, then there is no contract at all, or what is sometimes anomalously described as a void, as opposed to voidable, contract. If the fraud relates to the inducement to enter the contract, then the agreement is "voidable" at the option of the innocent party. The distinction is that if there is fraud in the inducement, the contract is enforceable against at least one party, while fraud in the factum means that at no time was there a contractual obligation between the parties.[20]

Under Delaware common law, contracts that offend public policy or harm the public are deemed *void,* as opposed to voidable.[21]

## D. *A life insurance contract that lacks an insurable interest at inception is void ab initio*

■■ Under Delaware common law, if a life insurance policy lacks an insurable interest at inception, it is void *ab initio*[22] because it violates Delaware's clear public policy against wagering.[23] It, therefore, follows that if no insurance policy ever legally came into effect, then neither did any of its provisions, including the statutorily required incontestability clause. "[T]he incontestable clause is no less a part of the contract than any other provision of it." [24] As a result, the incontestability provision does not bar an insurer from asserting a claim on the basis of a lack of insurable interest after the incon-

217, 535 N.E.2d 270 (1989); *Bogacki v. Great–West Life Assurance Co.,* 253 Mich. 253, 234 N.W. 865 (1931).

19. *Dougherty v. Mieczkowski,* 661 F.Supp. 267, 274 (D.Del.1987) (citing Restatement (Second) Contracts § 163, 164 (1981)) (internal quotations and citations omitted).

20. *Id.*

21. *Sann v. Renal Care Centers Corp.,* 1995 WL 161458, at *5 (Del.Super.Ct.) (stating that "[a]s a general rule, agreements against public policy are illegal and void.... No agreement can be sustained if it is inconsistent with the public interest or detrimental to the public good.").

22. *Baltimore Life Ins. Co. v. Floyd,* 91 A. 653 (Del.Super.Ct.1914) (holding that where a party lacking an insurable interest procures a policy directly or by assignment on the life of another, "the transaction is a mere speculation ... contrary to public policy, and therefore void"), *aff'd* 94 A. 515, 520 (Del.1915); *Draper v. Delaware State Grange Mut. Fire Ins. Co.,* 91 A. 206, 207 (Del.Super.Ct.1914) (same).

23. *See Frank v. Horizon Assurance Co.,* 553 A.2d 1199, 1205 (Del.Supr.1998) (holding that a contract provision that violates clear public policy is invalid as a matter of law); *See also* Del. Const. of 1897, art. II, § 17.

24. *Bromley's Adm'r,* 92 S.W. at 18.

testability period expires.[25] We reject the contrary result reached in *New England Mut. Life Ins. Co. v. Caruso*, because in that case the New York court, unlike Delaware and most other jurisdictions, held that a policy lacking an insurable interest was *not* void at the outset.[26]

■ Therefore, an insurer can challenge the enforceability of a life insurance contract after the incontestability period on the basis of a lack of an insurable interest.

### CONCLUSION

For the above reasons, this Certified Question is answered in the affirmative.

---

**25.** Our current case is distinguishable from *Oglesby. See Oglesby*, 695 A.2d at 1151. In *Oglesby*, this Court held the incontestability provision barred the insurer from contesting the validity of the contract based on misrepresentations in the insurance application related to pre-existing conditions. *Id.* This issue is resolvable by analyzing the nature of the fraud. Fraud relating to insurable interest is a fraud on the court because it violates the constitutional prohibition against wagering, and thus renders the contract void *ab initio*—a nullity. In contrast, basic fraud, such as misrepresentations in the application, renders the contract voidable subject to the contestability period.

**26.** *Caruso*, 538 N.Y.S.2d 217, 535 N.E.2d at 271.