Matter of New Brunswick Theol. Seminary v Van Dyke (2020 NY Slip Op 03114)





Matter of New Brunswick Theol. Seminary v Van Dyke


2020 NY Slip Op 03114


Decided on June 3, 2020


Appellate Division, Second Department


Miller, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 3, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
MARK C. DILLON
ROBERT J. MILLER
BETSY BARROS, JJ.


2018-12323
 (Index No. 600869/18)

[*1]In the Matter of New Brunswick Theological Seminary, respondent, 
v
Victoria Anne Van Dyke, appellant.



APPEAL by Victoria Anne Van Dyke, in a proceeding pursuant to CPLR article 75 to confirm an arbitration award dated January 12, 2018, from a judgment of the Supreme Court (Elizabeth H. Emerson, J.), dated September 20, 2018, and entered in Suffolk County. The judgment, upon an order of the same court dated August 13, 2018, granting the petition to confirm the arbitration award and denying Victoria Anne Van Dyke's cross motion to vacate the arbitration award and to dismiss the petition, is in favor of the petitioner and against Victoria Anne Van Dyke in the principal sum of $3,229,097.



La Reddola, Lester & Associates, LLP, Garden City, NY (Steven M. Lester of counsel), for appellant.
McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York, NY (Robert M. Van De Veire and Richard S. Mills of counsel), for respondent.



MILLER, J.


OPINION & ORDER
The appellant in this case was a registered broker with the Financial Industry Regulatory Authority (hereinafter FINRA). She contends that her constitutional right to procedural due process was violated when she failed to receive actual notice of an arbitration that had been commenced against her by one of her former clients. In analyzing the issues implicated by the appellant's claim, the parties have revealed a deep misunderstanding of the interplay between the constitutional rights to due process and freedom of contract, and the somewhat thorny issues that may arise when the parties have agreed to arbitrate their disputes in a nonjudicial setting. Given the parties' confusion and the relatively few writings devoted to this issue, we deem it appropriate to set forth some guidance on this topic in an effort to promote certainty and predictability in this important area of the law. For the reasons that follow, we affirm the judgment appealed from.
The petitioner commenced this proceeding pursuant to CPLR article 75 to confirm an arbitration award that it obtained against the appellant, who did not appear for the arbitration. As relevant here, the appellant cross-moved to vacate the award and to dismiss the petition on the ground that the procedure used for service of the notice of arbitration deprived her of her right to due process. In an order dated August 13, 2018, the Supreme Court granted the petition and denied the cross motion. A judgment dated September 20, 2018, was thereafter entered in favor of the petitioner and against the appellant in the principal sum of $3,229,097. The appellant appeals from the judgment. We affirm.
"[A]rbitration is a creature of contract" (Matter of Siegel [Lewis], 40 NY2d 687, 688), and "is a favored method of dispute resolution in New York" (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 93). Through arbitration, "[p]arties, by agreement, may substitute a different method for the adjudication of their disputes than those which would otherwise be available to them in public courts of law" (Matter of Siegel [Lewis], 40 NY2d at 688-689; see CPLR 7501; see also Restatement [Second] of Judgments § 84, Comment a). "When they do so, they in effect select their own forum" (Matter of Siegel [Lewis], 40 NY2d at 689). In New York, "[i]t has long been the policy of the law to interfere as little as possible with the freedom of consenting parties to achieve that objective" (id.; see Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d at 93).
In this case, the appellant, as a former registered broker with FINRA, does not dispute that she agreed to arbitrate this matter in accordance with FINRA's rules. Instead, the appellant contends that the contractual method used to provide notice of the arbitration, as applied in this case, worked to deprive her of her constitutional right to procedural due process. In this regard, the appellant asserts that service by certified mail was not reasonably calculated to place her on notice of the arbitration because the petitioner knew that she could be contacted by email and knew or should have known that she spent long periods of time away from her New York residences.
"[S]ervice of process . . . implicates [the] due process requirements of notice and opportunity to be heard" (Keane v Kamin, 94 NY2d 263, 265). "Notice of a proceeding is, of course, a fundamental component of a court's proper exercise of personal jurisdiction over a party" (John Galliano, S.A. v Stallion, Inc., 15 NY3d 75, 80). It is within this context, that it has been generally observed that "[d]ue process does not require actual receipt of notice before a person's liberty or property interests may be adjudicated; it is sufficient that the means selected for providing notice was reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'" (Matter of Beckman v Greentree Sec., 87 NY2d 566, 570, quoting Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314).
"Ordinarily a court can acquire jurisdiction of the person of a defendant only by service of process within the jurisdiction of the court; but that rule does not apply where the defendant has agreed in advance to accept, or does in fact accept, some other form of service as sufficient'" (Pohlers v Exeter Mfg. Co., 293 NY 274, 279, quoting Wilson v Seligman, 144 US 41, 44). "This consent may be given either before or after [an] action has been brought" (Gilbert v Burnstine, 255 NY 348, 355 [internal quotation marks omitted]). "To be effective, the consent must be given by a person who is under no legal incapacity, and jurisdiction must be exercised in strict conformity with the terms of the consent" (Restatement [Second] of Conflict of Laws § 32). Under those circumstances, it is a defendant's consent, as opposed to a defendant's relationship with the territorial jurisdiction, "which imparts power" (Gilbert v Burnstine, 255 NY at 355; see Matter of Bauer [Motor Veh. Acc. Indem. Corp.], 31 AD2d 239, 241; National Equip. Rental v Dec-Wood Corp., 51 Misc 2d 999, 1000 [App Term, 2d Dept]; see also Restatement [Second] of Conflict of Laws § 27[1][e]; Restatement [Second] of Judgments § 5).
Similarly, in the context of binding arbitration, it is the parties' consent which vests the authority in the arbitrator to decide a particular dispute. Accordingly, although the CPLR provides that a demand for arbitration, or a notice of intention to arbitrate, must be served "in the same manner as a summons or by registered or certified mail, return receipt requested" (CPLR 7503[c]), New York courts have long recognized that "parties to an arbitration agreement may prescribe a method of service different from that set forth in the CPLR" (Matter of New York Merchant's Protective Co. v Mima's Kitchen, Inc., 114 AD3d 796, 797; see Matter of Andy Floors, Inc. [Tyler Constr. Corp.], 202 AD2d 938, 939). Indeed, "the parties may agree to other methods for service, either by stipulating the manner in the arbitration clause or, more generally, by adopting the arbitration rules of an arbitration agency" (1 Domke on Commercial Arbitration § 18:9 [2020]). "Where . . . parties agree to the manner in which a demand for arbitration can be served, they do not have to comply with the service requirements established by CPLR 7503(c)" (Astoria Equities 2000 LLC v Halletts A Dev. Co., LLC, 47 Misc 3d 171, 177 [Sup Ct, Queens County]; see Matter of Severin [County of Broome], 89 AD2d 689; Matter of Wappingers Cent. School Dist. v Wappingers Congress of Teachers, 51 AD2d 766, 767; see generally 1 Domke on Commercial Arbitration § 18:9 [2020]).
Applying these principles, the Court of Appeals has enforced an arbitration agreement [*2]pursuant to which the parties consented to a particular notice procedure as set forth in an English statute (see Gilbert v Burnstine, 255 NY at 355). In that case, the Court of Appeals determined that "[the] [d]efendants' agreement without reservation to arbitrate in London according to the English statute necessarily implied a submission to the procedure whereby that law is there enforced" (id. at 354). "Otherwise the inference must be drawn that they never intended to abide by their pledge" (id.). The Court of Appeals stated that "[c]ontracts made by mature [individuals] who are not wards of the court should, in the absence of potent objection, be enforced" (id.). The Court of Appeals held that "under [New York] arbitration law" the agreement to arbitrate in accordance with the procedure set forth in the English statute "ha[d] become irrevocable in the sense that one of the parties without the consent of the other [could not] deprive it of its enforcibility" (id.).
Where parties to an arbitration agreement have consented to an alternative method of service, "[t]he method of service by which parties have agreed to be bound must be complied with according to the exact terms thereof in order that the requirements of due process be satisfied" (Matter of Republique Francaise [Cellosilk Mfg. Co.], 309 NY 269, 279; cf. Restatement [Second] of Conflict of Laws § 32). Unless otherwise provided for in the agreement to arbitrate, where the parties to an arbitration agreement consent to a particular arbitration procedure, "[t]he resolution of procedural questions, including whether the invocation of arbitration was proper or timely, commonly referred to as procedural arbitrability, is generally left to the arbitrator" (21 Richard A. Lord, Williston on Contracts § 57:25 [4th ed 2019]; see New York Merchants Protective Co., Inc. v Backyard Party Tent Rental, Inc., 34 Misc 3d 55, 57 [App Term, 2d Dept, 9th & 10th Jud Dists]). Unless the parties agree otherwise, "questions as to whether there has been compliance with such procedural regulations and, if not, what the consequences shall be, are for resolution by the arbitrator as incidental to the conduct of the arbitration proceeding" (Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1, 8; see Matter of United Nations Dev. Corp. v Norkin Plumbing Co., 45 NY2d 358, 363-364). Under such circumstances, judicial review of an arbitrator's determination is limited in the same way and for the same reasons that judicial review of any other aspect of an arbitrator's determination is limited (see CPLR 7511[b], [c]).
In this case, the appellant does not dispute that she agreed to arbitrate this dispute pursuant to FINRA's rules, which, as relevant here, set forth a mailing procedure by which service was to be effected (see generally Harris v Wells Fargo Clearing Servs., LLC, 2018 WL 6523384, 2018 US Dist LEXIS 202576 [SD NY, No. 18 Civ 4625 (GBD)]). The arbitrator in this case determined that the appellant was properly served in accordance with FINRA's rules. The appellant does not contend that FINRA's rules precluded the arbitrator from deciding this issue (cf. CPLR 7511[b][1][iii]), or contend that service was effected in violation of those rules (cf. Matter of Republique Francaise [Cellosilk Mfg. Co.], 309 NY at 275-276).
In short, the appellant does not contend that the agreement to arbitrate was breached in any way. Rather, she asks this Court to find that FINRA's notice of arbitration procedure, to which she consented and which was concededly followed, violated her right to due process. The appellant asks this Court, in effect, to refuse enforcement of the contractual notice provision unless it would have, in the absence of the parties' consent to the arbitral forum, formed an adequate and independent basis for a court to exercise personal jurisdiction over her. It is unnecessary to analyze this hypothetical scenario, however, as the arbitrator's power was derived from the appellant's consent, and the appellant's argument misapprehends the basic role of a court in enforcing a contract, regardless of whether it implicates arbitration or not.
Freedom of contract is a "deeply rooted" public policy of this state (New England Mut. Life Ins. Co. v Caruso, 73 NY2d 74, 81), and a right of constitutional dimension (see US Const, art I, § 10[1]; see 159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d 353, 359). "Generally, parties may contract as they wish and the courts will enforce their agreements without passing on the substance of them" (New England Mut. Life Ins. Co. v Caruso, 73 NY2d at 81).
"Of course, the public policy favoring freedom of contract does not mandate that the language of an agreement be enforced in all circumstances" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 360). "Contractual provisions entered unknowingly or under duress or coercion may not be enforced" (id.; see generally Restatement [Second] of Contracts §§ 151, 159, 164, 174, 175). The doctrine of unconscionability also protects against "unjust enforcement of onerous contractual terms which one party is able to impose [upon] the other because of a significant disparity in bargaining power" (Rowe v Great Atl. & Pac. Tea Co., 46 NY2d 62, 68; see Matter of Frankel v Citicorp Ins. Servs., Inc., 80 AD3d 280, 288-290). The appellant in this case does not [*3]attack the arbitration agreement on any of these grounds.
Aside from the defenses relating to the circumstances surrounding the formation of a contract, a party may seek to avoid the consequences of an otherwise valid contract on the ground that it is void against public policy. In this regard, a contractual provision may be rendered unenforceable where "the public policy in favor of freedom of contract is overridden by another weighty and countervailing public policy" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 360; see Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co., 86 NY2d 685, 695). "But, because freedom of contract is itself a strong public policy interest in New York, we may void an agreement only after balancing' the public interests favoring invalidation of a term chosen by the parties against those served by enforcement of the clause and concluding that the interests favoring invalidation are stronger" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 360-361, quoting New England Mut. Life Ins. Co. v Caruso, 73 NY2d at 81; see generally Restatement [Second] of Contracts § 178).
"Only a limited group of public policy interests has been identified as sufficiently fundamental to outweigh the public policy favoring freedom of contract" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 361). "The fact that a contract term may be contrary to a policy reflected in the Constitution, a statute or a judicial decision does not render it unenforceable" (id.), and the mere presence of a public interest "does not erect an inviolable shield to waiver" (Matter of American Broadcasting Cos. v Roberts, 61 NY2d 244, 249). Indeed, the courts of this State "regularly uphold agreements waiving statutory or constitutional rights" (159 MP Corp. v Redbridge Bedford, LLC, 33 NY3d at 361; see People v Thomas, 34 NY3d 1019).
In this case, we have little difficulty in concluding that the appellant is bound by the procedure to which she consented. The appellant agreed to receive notice of any dispute requiring arbitration by certified mail sent to an address that she provided to FINRA. The appellant did not dispute that, pursuant to those rules, she was required to maintain and update her mailing address with FINRA for that specific purpose. Although the initial notice of the arbitration that was sent to that address was returned "unclaimed," the appellant's decision not to claim mail sent to her designated residence, regardless of her reasons, does not render the contractual provision void against public policy. The appellant was on notice of the method by which she would receive notification and, by agreeing to that method, she was bound to take steps to ensure that such notice would be received. The appellant's contention that the contractual notice provision, to which she agreed, was inadequate in light of her travel habits, without more, does not justify their invalidation on public policy grounds. "The fact that with the benefit of hindsight, a party believes that it had agreed to an unfavorable contractual term, does not provide courts with authority to rewrite the terms of a contract or to extricate parties from poor bargains" (159 MP Corp. v Redbridge Bedford, LLC, 160 AD3d 176, 190 [Dillon, J.], affd 33 NY3d 353).
The appellant cites no authority to support her contention that public policy prohibits the enforcement of the specific mailing procedure set forth in the arbitration agreement. To the contrary, it has long been recognized that "[i]t is not contrary to natural justice that [an individual] who has agreed to receive a particular mode of notification of legal proceedings should be bound by a judgment in which that particular mode of notification has been followed, even though he [or she] may not have actual notice of them" (Pennoyer v Neff, 95 US 714, 735 [internal quotation marks omitted]; see Gilbert v Burnstine, 255 NY at 355-356).
Where, as here, the parties to an arbitration agreement set forth in that agreement the procedure that is to be used to provide notice of arbitration, the contractual notice provision, like the other terms of the arbitration agreement, remains "valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract" (Gilbert v Burnstine, 255 NY at 353; see Matter of Monarch Consulting, Inc. v National Union Fire Ins. Co. of Pittsburgh, PA, 26 NY3d 659, 665; see also 9 USC § 2). Contrary to the appellant's contention, in this case, there is "no constitutional or other legal impediment" to the enforcement of her consent to this arbitration procedure (Matter of Beckman v Greentree Sec., 87 NY2d at 571; see Matter of New York Merchant's Protective Co. v Mima's Kitchen, Inc., 114 AD3d at 797; cf. Matter of Harner v County of Tioga, 5 NY3d 136, 140).
Inasmuch as the appellant has failed to demonstrate any basis to vacate the arbitration award (see CPLR 7511[b]), we agree with the Supreme Court's determinations to grant the petition to confirm it, and to deny the appellant's cross motion to vacate the award and to dismiss the petition (see CPLR 7510, 7511[e]). Accordingly, the judgment is affirmed.
RIVERA, J.P., DILLON and BARROS, JJ., concur.
ORDERED that the judgment is affirmed, with costs.
ENTER:
Aprilanne Agostino
Clerk of the Court