South Brooklyn Ry. Co. v Heung Man Lau (2024 NY Slip Op 24139)

[*1]

South Brooklyn Ry. Co. v Heung Man Lau

2024 NY Slip Op 24139

Decided on May 7, 2024

Civil Court Of The City Of New York, Kings County

D'Souza, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 7, 2024
Civil Court of the City of New York, Kings County

South Brooklyn Railway Company, Petitioner-Licensor,

against
Heung Man Lau, Respondent-Licensee

Index No. LT-319383-22

Petitioner-Licensor: Ingram, Yuzek, Gainen, Carroll & Bertolotti, LLP by Shari S. Laskowitz, Esq.
Respondent-Licensee: Blank Rome LLP by Massimo Fabio D'Angelo, Esq.

L. Austin D'Souza, J.

In this summary holdover proceeding, Petitioner-Licensor (hereinafter, "Petitioner") moves for summary judgment [FN1]
pursuant to CPLR 3212; dismissal of Respondent-Licensee's (hereinafter, "Respondent") affirmative defenses pursuant to CPLR 3211(b)[FN2]
; and for a hearing on attorneys' fees (Motion Sequence #5). Respondent opposes summary judgment and cross-moves seeking leave to conduct discovery pursuant to CPLR 408 (Motion Sequence #6). Petitioner opposes the cross-motion.
The Court notes at the outset that a licensor-licensee relationship is distinct from a landlord-tenant relationship [FN3]
and is treated differently by statute and (to some extent) by case [*2]law. However, the parties' papers repeatedly, albeit inconsistently, refer to their relationship as a landlord-tenant relationship and their agreements include some rights and limitations that are typical of one sounding in tenancy. Consequently, the Court applies rules relating to tenancies when appropriate. Resolving the question of the true nature of the parties' relationship is not properly before the Court [FN4]
and making such a determination did not impede resolving the pending motions.
BACKGROUND
On November 1, 1998, the parties entered into a license agreement (hereinafter, the "Agreement") for the subject premises to be used as parking and storage lot through April 30, 2009 (see Miller aff, exhibit 1). The Agreement contained a single 10-year extension option, which Respondent exercised (id. at § 1.2(a)). The extension period expired on April 30, 2019. On July 25, 2019, the parties stipulated to extend the term of the license on a month-to-month basis through April 30, 2021 (id. at 59-62, July 25, 2019 extension letter; hereinafter "2019 Stipulation"). The 2019 Stipulation permits Petitioner to terminate the extended term upon 30 days' notice (id. at 59-62).
On April 28, 2022, Petitioner sent a "Notice of Termination" that terminated the license effective 30 days after receipt of that notice and demanded that Respondent vacate the premises [FN5]
by June 3, 2022 (id., exhibit 2). Thereafter, the parties stipulated to extended the license several times through July 15, 2022 (id., exhibits 3-5). Petitioner began this case by notice of petition and petition filed on August 23, 2022 and served on September 9, 2022.
ANALYSIS
I. Summary Judgment is Denied.
Summary judgment is a drastic remedy and may be granted only when no triable issues of fact exist (see CPLR 3212(a)). Movants bear the initial burden of establishing their right to summary judgment as a matter of law by tendering sufficient evidence, in admissible form, to eliminate any material issues of fact (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). CPLR 3212(b) provides that such motion " shall be supported by affidavit, by a copy of the pleadings and by other available proof, such as depositions and written admissions. The affidavit shall be by a person having knowledge of the facts; it shall recite all the material facts; and it shall show that there is no defense to the cause of action or that the cause of action or defense has no merit." In this regard, conclusory assertions are insufficient to demonstrate the absence of any material issues of fact (see Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993]). Failure to make the initial prima facie showing requires denying the motion, regardless of the sufficiency of the opposing papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once the moving party satisfies this obligation, the burden shifts and the party opposing the motion must demonstrate by admissible evidence the existence of a bona fide factual issue (see Xiang Fu He v Troon Mgt., Inc., 34 NY3d 167, 175 [2019]).
As a threshold matter, Petitioner failed to support its motion for summary judgment with a copy of the pleadings as required by CPLR 3212(b). Specifically, Petitioner did not attach a copy of Respondent's answer. The Court may deny the motion on this basis alone (see Fishkin v Feinstein, 67 AD3d 961, 962 [2d Dept 2009] ["[Movant was] not entitled to summary judgment since the papers she submitted in support of her motion failed to include copies of all of the pleadings filed in the action, as required by CPLR 3212 (b)."] (internal citations omitted)). However, given that Respondent did not object to the motion on this ground and Respondent's previous order to show cause to force Petitioner to accept its proposed answer pursuant to CPLR 2004 was granted (see S. Brooklyn Ry. Co. v Lau, et al., Civ Ct, Kings County, July 27, 2023, Fynes, J., index No. LT-319383-22), the Court will take judicial notice of Respondent's answer.
There are at least three issues precluding summary judgment: (1) the notice to quit was not clear; (2) Petitioner did not timely serve the notice to quit [FN6]
; and (3) Petitioner did not service the notice using a proper method of service.
The Predicate Notices Were Not Unequivocal
Predicate notices must be clear, unambiguous, and unequivocal to properly apprise a respondent of the action being brought against them (see Lehtonen v Dellaquila, 67 Misc 3d 139 [App Term, 2d Dept, 9th & 10th Jud Dists 2020]). Predicate notices are unamendable (see Chinatown Apts., Inc. v Chu Cho Lam, 51 NY2d 786 [1980]), and a defective predicate notice deprives the court of subject matter jurisdiction (see Bray Realty, LLC v Pilaj, 59 Misc 3d [*3]130[A], 2018 NY Slip Op 50426[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2018]) and risks confusion of the claims being asserted (see Jewish Theological Seminary of America v Fitzer, 258 AD2d 337 [1st Dept 2018]).
First, Petitioner served a notice to quit on April 28, 2022 that required Respondent to vacate by June 3, 2022. The petition references the notice to quit and follow up stipulations as the predicate notice for bringing this action (see petition ¶ 5). However, Petitioner abandoned its April 28, 2022 notice to quit through a series of follow up stipulations wherein it agreed to extend two principal terms: the deadline to vacate and the areas that the notice was intended to recover. Specifically, in a stipulation dated June 3, 2022 (see Miller aff, exhibit 3; hereinafter, "June 3, 2022 Stipulation") the parties acknowledged that, "[n]otwithstanding the Notice of Termination, Licensor hereby agrees that with respect to the parking areas, the License shall remain in full force, and all obligations of Licensee under the License shall remain in full force and effect through and including 11:50 p.m. June 30, 2022 . . . . Accordingly, as of the Extended Vacate Date, the License as to the Parking Areas will be terminated pursuant to the terms and conditions set forth in the Notice of Termination." Thus, the June 3, 2022 Stipulation by its own terms abandoned the notice to quit by changing the terms of the notice (i.e., what is actually being terminated) and, therefore, equivocating on the terms Petitioner now seeks to enforce. The Court finds that the notice to quit cannot serve as a proper predicate notice to bringing this summary proceeding because it was not clear and unequivocal.
Moreover, once Petitioner changed the terms of the notice to quit (through follow up stipulations), it was required to serve a new notice to quit because the stipulations omitted information regarding terminating the Agreement.
While RPAPL 713 does not specify what needs to be stated in a notice to quit, our courts have held that a notice to quit must "advis[e] the occupant to leave the premises by a date certain and further that a summary proceeding will be commenced to evict the occupant in the event he fails to vacate the premises" (Kyriacou v Kangelaris, 169 Misc 2d 236, 237 [Nassau Dist Ct 1996] [internal citations omitted]; see also New York City Housing Authority v Rosario, 65 Misc 3d 1205[A], 2019 NY Slip Op 51500[U] [Civ Ct, Bronx County 2019, Sanchez, J.]). Petitioner, therefore, may not bootstrap the follow up stipulations to the original notice to quit because these stipulations omitted statements indicating the consequence for failing to vacate. This omission deprives the Court of subject matter jurisdiction [FN7]
(see Katz v Grifa, 156 Misc 2d 203, 206 [Civ Ct, New York County 1992, Kapnick, J.] [Court lacks subject matters jurisdiction over a summary holdover proceeding where Respondent was not informed of the legal consequences of their failure to vacate the premises within the 10-day period provided by the notice to quit.]). The omission further obscures the Petitioner's intention to terminate the license and seek Respondent's removal because the repeated extension letters imply that the notice to quit was merely advisory or an invitation to negotiate further extensions or renewals.
Furthermore, since the terms of the original notice to quit were changed with each follow up stipulation, Petitioner was required to serve a new notice to quit because the extension letter superseded the previous notice (see McKay v Farquharson, 75 Misc 3d 1223[A] [Civ Ct, Queens County 2022, Sanchez, J.] citing 28 Mott St. Co. v Summit Import Corp., 64 Misc 2d 860, 864 [Civ Ct, New York County 1970, Myers, J.] ["[A] subsequent notice after the expiration of the first is in effect an admission that a tenancy still subsists, and is a waiver of the first notice." (internal quotation marks and citations omitted)]).
Insufficient Notice and Improper Service
Summary proceedings are special proceedings created by legislation (see RPAPL art 7) and, therefore, in derogation of the common law. Rules governing summary proceedings must be strictly construed, especially on jurisdictional questions (see Williams v Llorente, 115 Misc 2d 171, 172 [App Term, 1st Dept, 1st Jud Dist 1982] citing Beach v McGovern, 41 AD 381, 383 [2d Dept 1899]). Petitioners must strictly abide by the RPAPL to benefit from the efficiency that summary proceeding provide as compared to plenary actions (see Columbus Prop. Inc. v I S K S Realty Corp., 163 Misc 2d 446, 448 [Civ Ct, New York County 1994, Stallman, J.]).
While our courts have not adopted a universal rule about whether or in what circumstances parties may agree to depart from the RPAPL, the modern consensus is "that with respect to jurisdictional matters, the proceeding should be conducted strictly in accordance with the statute, but, once jurisdiction has been obtained, the remedy should be liberally applied" (2 Robert F. Dolan, Rasch's Landlord and Tenant, Including Summary Proceedings § 29:13 [5th ed, June 2023 update]). Thus, when it comes to essential rules, such as conditions precedent to bringing summary proceedings, these requirements may not be waived, even on consent of all parties (see e.g. PAK Realty Assocs. v RE/MAX Universal, 157 Misc 2d 985, 986 [Civ Ct, Queens County 1993, Lisa, J.] [Nonpayment petition dismissed because Petitioner failed to serve a rent demand despite the lease specifically waiving such a demand. "While parties may give themselves more rights by way of a lease, they cannot lessen a right given them by statute when it is against public policy to waive that right."]).
With respect to the amount of notice required where no landlord-tenant relationship exists, RPAPL 713 states, "[a] special proceeding may be maintained under this article after a ten-day notice to quit has been served upon the respondent in the manner prescribed in section 735 . . . ." (emphasis added). This ten-day notice requirement is jurisdictional and non-waivable (see Lally v Fasano-Lally, 22 Misc 3d 29 [App Term, 2d Dept, 9th & 10th Jud Dists 2008] [Petition dismissed where petitioner-licensor only gave nine days' notice before filing petition]), though parties are permitted to agree to notice greater than that required by RPAPL (see Alexander Muss & Sons v Rozany, 170 Misc 2d 890, 892 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 1996]).
The method of service for a notice of petition and petition is prescribed in RPAPL 735 and the acceptable methods of service include personal service, substitute service, and conspicuous placement. In contrast to the amount of notice given, our courts have permitted parties to vary the method of service in certain circumstances (see e.g. Matter of New Brunswick Theol. Seminary v Van Dyke, 184 AD3d 176, 179 [2d Dept 2020], citing Pohlers v Exeter Mfg. Co., 293 NY 274, 279 [1944] ["Ordinarily a court can acquire jurisdiction of the person of a defendant only by service of process within the jurisdiction of the court; but that rule does not [*4]apply where the defendant has agreed in advance to accept, or does in fact accept, some other form of service as sufficient." (internal quotation marks and citations omitted)]; Alexander Muss & Sons, 170 Misc 2d at 892 citing Four Star Holding Co. v Alex Furs, Inc., 153 Misc 2d 447 [App Term, 1st Dept, 1st Jud Dist 1992] [In declining to enforce a lease provision altering service for predicate notices because it was not sufficiently specific enough to waive RPAPL 711, the Court held, "commercial entities represented by counsel are free to adopt notice requirements at variance with RPAPL 711, their intent to do so should be expressly stated in the lease"]). Consistent with the Court of Appeal's long-held view that jurisdictional rules for summary proceedings should not "hypercritically" restrict efficient resolution of property disputes (see Reich v Cochran, 201 NY 450, 455 [1911]), it is this Court's opinion that the method of service may vary from RPAPL 735, provided that the parties explicitly waive service required for summary proceedings by prior written agreement [FN8]
and only when the parties are represented by counsel.
Here, having already decided that the April 28, 2022 notice to quit was improper (see Summary Judgment Denied supra at 3-4), the Court finds that the final follow up stipulation dated July 7, 2022 (hereinafter, "July 7, 2022 Stipulation") does not comply with RPAPL 713 because it only gave Respondent eight days to vacate, instead of ten days. Additionally, the July 25, 2019 Stipulation required Petitioner to serve a notice to quit on thirty-days' notice (see Miller aff, exhibit 1 at 60, ¶ 5).
Lastly, the method of service of the notice to quit (and follow up stipulations) did not comply with either the Agreement nor RPAPL 735. The July 25, 2019 Stipulation stated "the Termination Notice may be given in accordance with Paragraph 21 of the License and need not be served in the same manner in which a notice of petition in summary proceeding is to be served" (id. ¶ 5[ii]). Paragraph 21 of the Agreement states that notices "shall be either (i) personally delivered, (ii) sent by overnight courier or (iii) sent by Certified Mail return receipt requested" (see Miller aff, exhibit 1, ¶ 21). The delivery address for the Licensee is described as "the address set forth above or at the Licensed Area" (id.). The address of the subject premises is 874-880 5th Avenue, Brooklyn, NY 11232. The only other address listed for Respondent is in the heading of the Agreement and states that the agreement is between the Petitioner and "Ms. Heung Man Lau, an individual residing at 89-48 220th St., Queens Village, NY 11429" (id.).
Here, the follow up stipulations extending the terms of the Agreement clearly stated that the parties agree to dispense with the statutory service for the predicate notice. However, Petitioner failed to serve the notice to quit and follow up stipulations properly. Petitioner did not submit an affidavit of service for the notice to quit or any of the follow up stipulations. Gerard Miller, a Senior Account Manager for Petitioner served all relevant documents, but the affidavit fails to identify how the documents were served (see Miller aff ¶ 4). The records themselves state that they were sent by certified mail to Heung Man Lau at 56-48 217th Street, Oakdale Gardens, NY 11364 and emailed to adybner&commat;dyblaw.com and flossfish2006&commat;yahoo.com (id., exhibits 1-5). Thus, neither the notice to quit nor the follow up stipulations were served pursuant to RPAPL 735. Furthermore, the service address for Respondent as stated on parties' records does not match Respondent's address as stated in the Agreement (id., exhibit 1).
Accordingly, the Court finds that Petitioner did not serve a 10-day notice to quit as required by RPAPL 713 [FN9]
, nor did it serve any additional stipulations in the manner agreed to by the parties. Therefore, Petitioner failed to prove a prima facie case warranting summary judgment.
II. Dismissal of Affirmative Defenses is Partially Granted.
Pursuant to CPLR 3211(b), "[a] party may move for judgment dismissing one or more defenses, on the ground that a defense is not stated or has no merit." The movant bears the burden of demonstrating that the affirmative defense is without merit as a matter of law (see Greco v Christoffersen, 70 AD3d 769, 771 [2d Dept 2010]). In reviewing such a motion, the Court must liberally construe the pleadings in Respondent's favor and give it the benefit of every reasonable inference (id.). A defense should not be dismissed if there is any doubt as to the availability of the defense (see Federici v Metropolis Night Club, Inc., 48 AD3d 741, 743 [2d Dept 2008]). Once the movant properly submits evidence attacking the factual basis of a defense, the burden shifts to opposing party to come forth with sufficient evidence to raise an issue of fact with respect to the defense (see Rotondi v Drewes, 31 AD3d 734, 736 [2d Dept 2006]). If a movant seeks to challenge the factual basis of a defense, it must do so by an affidavit of someone with personal knowledge (or other evidence); an attorney's affidavit is insufficient for this purpose (see Becker v Elm Air Conditioning Corp., 143 AD2d 965, 966 [2d Dept 1998]). Here, Petitioner seeks dismissal of all twelve affirmative defenses. Respondent summarily opposes dismissal, contending that Petitioner failed to meet its burden in support of dismissal (see Respondent's mem of law in opp at 9-10).
First Affirmative Defense
Respondent's first affirmative defense alleges that the Petition fails to state a cause of action upon which relief can be granted (see Answer ¶ 13). The Appellate Division, Second Department, in accord with its sister tribunals, held in Butler v Catinella, 58 AD3d 145, 150 (2d Dept 2008), that such an affirmative defense is "harmless surplusage" and a motion to strike the defense should be denied because it amounts to a plaintiff testing the sufficiency of its own claim. Therefore, dismissal of the first affirmative defense is unwarranted.
Second Affirmative Defense
Respondent's second affirmative defense alleges that Petitioner's claims are barred by [*5]documentary evidence (see Answer ¶ 14). Petitioner complains that this affirmative defense does not refer to any specific documents that purportedly bar the claim (see Laskowitz affirmation ¶ 29). Though Respondent did not refer to any specific documents in its second affirmative defense, it is clear based on the Court's analysis denying Petitioner's motion for summary judgment that, inter alia, deficiencies in the predicate notices supporting the Petition may serve as documentary evidence that bars this proceeding (see Summary Judgment Denied supra at 3-6). Accordingly, the Court denies dismissal of the second affirmative defense.
Third and Twelfth Affirmative Defenses
The third affirmative defense alleges that the Petitioner's claims are barred by the doctrine of unclean hands, specifically that Petitioner carried out an illegal self-help eviction (see Answer ¶¶ 15-16). The twelfth affirmative defense alleges that Petitioner's self-help eviction and multiple proceedings constitute commercial tenant harassment (see Answer ¶ 26).
A landlord may regain possession without a proceeding if it is done lawfully and peaceably (see Martinez v Ulloa, 50 Misc 3d 45, 47 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). However, forcible reentry is forbidden (see 110-45 Queens Blvd. Garage, Inc. v Park Briar Owners, Inc., 265 AD2d 415, 415 [2d Dept 1999] [internal citations omitted]).
Here, the competing accounts of Respondent's removal from the warehouse portion of the premises present a question of fact as to whether Petitioner's reentry was forcible. Petitioner contends that "Respondent surrendered possession of two (2) warehouses to NYCT Security" (Miller aff ¶ 12). However, Respondent avers that Petitioner "has taken a number of increasingly aggressive steps to wrongfully and illegally evict me from the Premises. . . locking me out of buildings located on the Premises, which still contain my business's property, repeatedly blocking my access to the Premises . . . ." (Lau aff ¶¶ 3-4). While Respondent's version of events seemingly contradicts terms of the June 3, 2022 Stipulation and June 30, 2022 Stipulation (see Miller aff, exhibits 3-4), the Court is constrained to give Respondent the benefit of every possible inference.
Since a question of fact exists with respect to elements of the third and twelfth affirmative defenses, dismissal is unwarranted.
Fourth, Sixth, and Seventh Affirmative Defenses
Respondent's fourth affirmative defense alleges that Petitioner breached the covenant of good faith and fair dealing because Petitioner had ulterior motives for the termination (see Answer ¶¶ 17-18). The sixth affirmative defense alleges that Respondent complied with the Agreement (id. ¶ 20). The seventh defense alleges that the termination notice is vague and ambiguous in that it fails to state a reason for terminating the license (id. ¶ 21).
Each of these affirmative defenses assume that Petitioner has a legal duty to justify its refusal to renew the license or its decision to terminate the license. No such duty exists (see Summary Judgment Denied supra at 3-4; see also Matter of Arc on 4th St. Inc. v Quesada, 112 AD3d 431, 432 [1st Dept 2013] ["[A notice to terminate] does not require a landlord to state the precise grounds for eviction."]). Respondent did not cite to any authority to the contrary and the Court is unaware of any such authority. Therefore, Petitioner's motivation for terminating the license is not properly before the Court for review.
Since there is no legal basis to maintain Respondent's fourth, sixth, and seventh affirmative defenses, the Court grants the branch of Petitioner's motion to dismiss these affirmative defenses.
Fifth and Ninth Affirmative Defenses
The fifth and ninth affirmative defenses allege that Respondent is entitled to an abatement in the license fee because of Petitioner's conduct during the purported self-help eviction (see Answer ¶ 19 and ¶ 23). These defenses relate to the value of the licensed property being reduced by conditions that the Petitioner should have remedied. However, Petitioner withdrew its request for a money judgment for use and occupancy without prejudice (see Laskowitz affirmation ¶¶ 41-44; 56-59). Consequently, the fifth and ninth affirmative defenses are dismissed as moot, without prejudice.
Eighth and Tenth Affirmative Defenses
The eighth affirmative defense alleges that Petitioner's April 28, 2022 notice to quit was defective because it was (1) not signed by a proper party and (2) not served in a manner required by the RPAPL or the Agreement (see Answer ¶ 22). Respondent also alleges in their tenth affirmative defense that the Court lacks personal jurisdiction over Respondent because Petitioner did not serve the petition pursuant to the RPAPL or CPLR (id. ¶¶ 24-25). Since the Court already found that there is potential merit to the affirmative defenses regarding personal jurisdiction based on improper service (see Summary Judgment Denied supra at 3-6), these affirmative defenses shall not be dismissed.
With respect to the Respondent's allegation that the notice to quit is defective because it was signed by an improper party, Petitioner asserts that David Florio, the Director of Real Estate Transaction and Operations for the Metropolitan Transit Authority (hereinafter, "MTA") is an authorized signatory (see Laskowitz affirmation ¶ 50-52). However, Petitioner failed to explain what relationship David Florio or the MTA has with Petitioner that would permit them to sign on Petitioner's behalf. The Court declines to dismiss this portion of the eighth affirmative defense insofar as Petitioner did not support its assertion with an affidavit of someone with personal knowledge (see Becker, 143 AD2d at 966).
Eleventh Affirmative Defense
The eleventh affirmative defense alleges that Petitioner vitiated its April 28, 2022 notice to quit because it accepted rent after April 28, 2022 and before commencing the holdover proceeding (see Answer ¶ 26). A summary holdover proceeding is commenced when a notice of petition and petition are served on the respondent (see 92 Bergenbrooklyn, LLC v Cisarano, 50 Misc 3d 21, 26 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2015]). Here, Petitioner commenced this holdover proceeding when it served Respondent [FN10]
with the Notice of Petition [*6]and Petition on September 9, 2022 (see NYSCEF Doc No. 29, affidavit of service for Notice of Petition and Petition).
A landlord vitiates (i.e., waives [FN11]
) its notice of termination by accepting rent before commencing a holdover proceeding (see 92 Bergenbrooklyn, LLC, 50 Misc 3d at 26; see also 175 E. Parkway Assoc. v Baptiste, 31 Misc 3d 138[A], 2011 NY Slip Op 50767[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011] ["This court has held that the acceptance of rent for the period after the termination of the lease vitiates the notice of termination and the petition must be dismissed." (internal citations omitted)]; Andrew Scherer, Residential Landlord Tenant Law in New York § 11:12 [December 2023 update] ["Another way in which acceptance of rent can operate as a waiver to a landlord's right to proceed in a holdover proceeding is where the landlord accepts rent after the date set for termination of the tenancy in a termination notice but prior to commencement of the holdover proceeding. Acceptance of rent at this time reinstates the tenancy and waives the notice to terminate." (internal citations omitted)]).
Petitioner contends that it did not accept rent after July 15, 2022 (see Miller aff ¶ 11). Respondent claims that they paid rent in May 2022 (see Respondent's mem of law in opp at 10)[FN12]
and contends that the conflicting versions of facts raises a question of fact (id.).
For purposes of determining the window period for waiving a notice to quit, the Court already resolved that the notice to quit served on April 28, 2022 and the follow up stipulations do not qualify as notices to quit (see Summary Judgment Denied supra at 3-4). However, even if the April 28, 2022 notice to quit were acceptable, the ledger annexed to Miller's affidavit indicates that Petitioner accepted rent twice (May 2, 2022 and July 27, 2022) before commencing this holdover proceeding on September 9, 2022 (see Miller aff, exhibit 6). At the very least, Petitioner's own records create a question of fact about whether it vitiated the April 28, 2022 notice to quit. Therefore, the eleventh affirmative defense survives dismissal.
III. Respondent's Cross-motion for Discovery Denied.
Respondent cross-moves pursuant to CPRL 408 seeking discovery to support their defense that Petitioner terminated the license in bad faith.
In a summary proceeding, discovery is not given as-of-right, as in a plenary action. Courts may grant leave to conduct limited discovery under CPLR 408 if a party shows "ample need" (Antillean Holding Co v Lindley, 76 Misc 2d 1044 [Civ Ct New York County 1973, Kassal, J.]). The factors in determining ample need were explained by Judge Saxe:
"(1) whether, in the first instance, the petitioner has asserted facts to establish a cause of action. Thus, a fishing expedition utilized by the landlord for the purpose of formulating a cause of action or by the tenant to establish a defense, should never be permitted;
(2) whether there is a need to determine information directly related to the cause of action;
(3) whether the requested disclosure is carefully tailored and is likely to clarify the disputed facts;
(4) whether prejudice will result from the granting of an application for disclosure;
(5) whether the prejudice can be diminished or alleviated by an order fashioned by the court for this purpose, e.g., conditioning a grant of a motion for discovery upon the payment of use and occupancy; ordering that all discovery must be done, if at all, within a relatively short time period;
(6) whether the court, in its supervisory role can structure discovery so that pro se tenants, in particular, will be protected and not adversely affected by a landlord's discovery requests."
(New York University v Farkas, 121 Misc 2d 643 [Civ Ct, New York County 1983, Saxe, J.].
Since Farkas, our Courts have begun to embrace an approach that focuses on balancing the need for discovery with the speedy resolution of the case: "[T]he modern approach to discovery in eviction proceedings requires the court to determine whether the movant has established a genuine need for disclosure and whether granting disclosure will create more efficiency. If the answer to those questions is yes, then the court should grant discovery but avoid prejudice by crafting an order that limits the discovery" (Temo Realty LLC v Herrera, 82 Misc 3d 299, 301 [Civ Ct, Kings County 2023, Basu, J.]; see also 50th Street HDFC v Abdur-Rahim, 72 Misc 3d 1210[A], 2021 NY Slip Op 50693[U], *1 [Civ Ct, Kings County 2021, Weisberg, J.]).
Here, Respondent contends that the documents they seek pertain to the defense that Petitioner terminated the license in bad faith. The second of the Farkas factors addresses relevance to the cause of action. As previously discussed, the issue of bad faith is not properly before this Court (see Affirmative Defenses supra at 8-9). Moreover, where a landlord or licensor has an absolute right to terminate a relationship for any reason, the tenant or licensee has no expectation of good faith (124 In-To-Go Corp. v Roundabout Theatre Co., Inc., 266 AD2d 166 [1st Dept 1999]). Therefore, the information sought is not pertinent to a viable defense. Respondent's cross-motion is denied.
The Court also notes that, on July 20, 2022, Respondent commenced an action in Supreme Court, Kings County (see Laskowitz affirmation in opp, exhibit 3, summons and complaint) against Petitioner alleging harassment, seeking injunctive relief from an alleged illegal lockout, and declaratory relief. The Supreme Court entered a case scheduling order directing the parties to exchange discovery relating to Petitioner's alleged bad faith conduct (see Lau v S. Brooklyn Ry. Co., Sup Ct, Kings County, April 22, 2024, Ruchelsman, J., index No. 520688/2022). Therefore, Respondent is not prejudiced from being precluded discovery in this [*7]action.
Accordingly, it is hereby
ORDERED that the branch of Petitioner's motion seeking summary judgment is DENIED in its entirety and the related relief of awarding attorney's fees also is DENIED (without prejudice); it is further
ORDERED that the branch of Petitioner's motion seeking to dismiss Respondent's affirmative defenses is PARTIALLY GRANTED to the extent of dismissing the fourth, fifth, sixth, seventh, and ninth affirmative defenses; the remaining affirmative defenses (the first, second, third, eight, tenth, eleventh, and twelfth) are not dismissed; it is further
ORDERED that Respondent's cross-motion seeking leave to conduct discovery is DENIED in its entirety; and it is further
ORDERED that all parties shall appear for an "all purposes" conference on a date to be scheduled by the clerk of this Court.
This constitutes the Decision and Order of the Court.
Dated: May 7, 2024
Brooklyn, NY
HON. L. AUSTIN D'SOUZA
Judge, New York City Civil Court

Footnotes

Footnote 1:Petitioner initially filed its motion as one seeking to restore (see NYSCEF Doc No. 42), but it amended its notice of motion to one seeking summary judgment and other relief (see NYSCEF Doc No. 56).

Footnote 2:Petitioner misstates the CPLR provision as CPLR 3211(a)(7).

Footnote 3:See e.g. Greenwood L. & P. J. R. Co. v NY & G. L. R. Co., 134 NY 435, 440 [1892] ["A license is a personal, revocable and non-assignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interest therein." (internal citations omitted)]; see also American Jewish Theatre, Inc. v Roundabout Theatre Co., Inc., 203 AD2d 155 [1st Dept 1994] ["The nature of the transfer of absolute control and possession is what differentiates a lease from a license or any other arrangement dealing with property rights. Whereas a license connotes use or occupancy of the grantor's premises, a lease grants exclusive possession of designated space to a tenant, subject to rights specifically reserved by the lessor. The former is cancellable at will, and without cause. Where one party's interest in another's real property exists for a fixed term, not revocable at will, and terminable only on notice, a landlord-tenant relationship has been created." (internal citations omitted)].

Footnote 4:Were the Court asked to make such a determination, it would review "the terms of the parties' agreements—including their short-term duration, the limitations on the premises' use, the agreements' non-assignability, and the rights of petitioner to enter at any time without notice, and to revoke the permits without notice in the event occupant failed to comply with any term thereof" (E. Ramapo Cent. Sch. Dist. v Mosdos Chofetz Chaim, Inc., 52 Misc 3d 49, 50-51 [App Term, 2d Dept, 9th & 10th Jud Dists 2016] [internal citations omitted]).

Footnote 5:Respondent vacated the warehouses, but not the parking areas, as of June 3, 2022 (see Miller aff, exhibit 4). However, Respondent contends that Petitioner caused them to vacate the warehouse by an improper self-help eviction (see Lau aff ¶¶ 3-4).

Footnote 6:Additionally, the "notice to terminate" should have been labeled as a "notice to quit" to fully comply with RPAPL 713(7). Hereinafter, "notice to terminate" shall be referred to as "notice to quit."

Footnote 7:While the Court enjoys the inherent authority to search the record and grant summary judgment without prior notice in favor of a nonmoving party (see, e.g., Backer v Bouza Falco Co., 28 AD3d 503 [2d Dept 2006]; also see David D. Siegel & Patrick M. Connors, New York Practice § 282 [6th ed, June 2023 update]), it declines to do so here and, instead, invites the parties to resolve the matters in dispute on their own terms.

Footnote 8:In adopting this view, the Court recognizes that parties commonly transact business and communicate by electronic means, including serving notices by e-mail.

Footnote 9:Ordinarily, a deficient predicate notice necessitates dismissal of the entire summary proceeding. However, several issues raised in this case are also being litigated in Supreme Court, Kings County and are likely to be asserted in another summary proceeding. Thus, the Court finds it more provident to encourage the parties to resolve all issues at once (to the extent they can), rather than partitioning these issues and prolonging the final resolution of the underlying dispute. See n 7, infra.

Footnote 10:Respondent previously challenged the sufficiency of service of the Notice of Petition and Petition and demanded a Traverse hearing. The Court previously denied Respondent's request (see S. Brooklyn Ry. Co. v Lau, et al., Civ Ct, Kings County, July 27, 2023, Fynes, J., index No. LT-319383-22).

Footnote 11:See Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 (2006) ("Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned. Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage. However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection. Generally, the existence of an intent to forgo such a right is a question of fact." [internal citations and quotation marks omitted]).

Footnote 12:Respondent's counsel cites to paragraph 25 of Lau's affidavit (see Respondent's mem of law in opp at 10). However, Lau's affidavit ends with paragraph 22 and makes no reference to rent payments (see Lau aff).