**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

U.S. BANK NATIONAL ASSOCIATION,   )
  )
        Plaintiff,   )
  )
      v.   )   C.A. No. K24L-12-030 NEP
  )
HEATHER M. STEVENS; and HEATHER   )
MICHELE STEVENS, TRUSTEE OF THE   )
HEATHER MICHELE STEVENS TRUST,   )
  )
        Defendants. )

Submitted: February 11, 2025
Decided: April 17, 2025

## <u>MEMORANDUM OPINION AND ORDER</u>

*Upon Defendant's Motion To Dispute Debt Arising From An Adhesion Contract*

**DENIED**

*Upon Defendant's Motion For Full Audit To Verify Sources Of Funds Used In Loan*

**DENIED**

*Upon Defendant's Motion For Writ of Production To Produce Evidence*

**DENIED**

Kimberly E. C. Lawson, Esquire, Robertson, Anschutz, Schneid, Crane & Partners PLLC, Wilmington, Delaware, *Attorney for the Plaintiff*.

Heather M. Stevens, Dover, Delaware, *Pro Se Defendant*.

**Primos, J.**

**INTRODUCTION**

Rather than filing an answer to Plaintiff U.S. Bank National Association's complaint seeking to foreclose on her home, Defendant Heather M. Stevens filed three motions with this Court. Defendant first requests that the Court dismiss Plaintiff's complaint, citing several affirmative defenses and Plaintiff's purported failure to comply with various filing requirements, including those imposed by the Fair Debt Collection Practices Act. Defendant, in the alternative, requests that the Court order an audit of Plaintiff's finances in hopes of discovering the source of the funds loaned to her; and, separately, that the Court order Plaintiff to produce documents related to the source of those funds. The Court concludes that Defendant has insufficiently pled her affirmative defenses to clear the high bar for dismissal on that basis; that her claim that Plaintiff failed to comply with its filing obligations is contradicted by documents accompanying Plaintiff's complaint; that Defendant's desired audit, even if within this Court's power in this context, would exceed the bounds of permissible discovery under Superior Court Civil Rule 26; and that Defendant's motion compelling production of documents does not comply with the applicable filing requirements of Superior Court Civil Rule 37. Accordingly, each of Defendant's motions is **DENIED.**

## I.  BACKGROUND[1]

On January 25, 2016, Defendant Heather M. Stevens executed a note and mortgage through which American Neighborhood Mortgage Acceptance Company LLC agreed to loan her $159,645.00.[2] In exchange, Defendant promised to make periodic payments and pay the full principal, plus interest at an annual rate of 4.375 percent, not later than February 1, 2046.[3] As permitted by Paragraph 19 of the

---

[1] Citations in the form of "D.I. ___" refer to docket items.
[2] *See generally* Compl. Exs. E, F (D.I. 1).
[3] *Id.*

mortgage, the lender transferred the note and mortgage to Plaintiff U.S. Bank National Association.[4]   The formal assignment of those instruments was executed on August 28, 2024, and recorded on September 11, 2024.[5]

On December 31, 2024, Plaintiff filed a complaint with this Court (the "Complaint").[6]  In the Complaint, Plaintiff alleges that Plaintiff is the holder of a note secured by a mortgage on Defendant's home, and that Defendant is in default of her obligations thereunder.[7]  Along with the Complaint, Plaintiff attached a copy of the previously-described note; mortgage; documentation that the mortgage had been assigned to Plaintiff before it filed suit; and various other documents.[8]

Rather than filing an answer to the Complaint, Defendant, on January 21, 2025, filed three motions.[9]  These motions were titled:  (1) "Motion to Dispute Debt Arising from an Adhesion Contract"; (2) "Motion for Full Audit to Verify Sources of Funds Used in Loan"; and (3) "Motion for Writ of Production to Produce Evidence."  Plaintiff filed a response to each motion on February 4, 2025.[10]

Defendant's first motion asserts that "[t]he debt claimed by the Plaintiff arises from an adhesion contract that is procedurally and substantively unconscionable"; that said contract was not supported by "valid consideration"; that enforcement of the mortgage would violate public policy; and that Plaintiff "failed to provide

---

[4] *Id.* at Ex. G.
[5] *Id.*
[6] *See* D.I. 1.
[7] *See generally* Compl. (D.I. 1).
[8] *Id.*  These additional documents were:  a notice of foreclosure mediation form; a certificate of participation for the Automatic Residential Mortgage Foreclosure Mediation Program for Defendant to fill out; a universal intake form for Defendant to secure representation; a "foreclosure intervention counseling client's checklist"; an affidavit of compliance with 10 *Del. C.* § 5062D(b), including certification that Defendant was duly served notice of intent to foreclose as required by 10 *Del. C.* § 5062B(a)(3), and a statement of the amounts due and owing; and a notice required by the federal Fair Debt Collection Practices Act.
[9] *See* D.I. 5.
[10] *See* D.I. 6–8.

sufficient evidence to validate the alleged debt, including a copy of the original agreement, an itemized account statement, and proof of compliance with applicable consumer protection laws, such as the Fair Debt Collection Practices Act (15 U.S.C. § 1692g)."[11] Defendant therefore requests that this Court dismiss Plaintiff's claim; "[a]lternatively, require the Plaintiff to provide evidence establishing the contract's enforceability and validity"; and award any other relief this Court "deems just and proper."[12] Defendant's first motion is described more fully in Section II.A. of this opinion.

Defendant's second motion asserts that, "[u]pon review of the loan terms and circumstances surrounding the issuance of the loan, Defendant has reason to question the legitimacy and source of funds used to grant the loan."[13] Defendant further contends that "[i]t is essential to ensure that the money was lawfully earned and properly accounted for prior to its loan to the Defendant."[14] According to Defendant, an audit is "necessary to address concerns about potential misconduct, illegitimacy of funds, or failure to adhere to applicable regulatory requirements."[15] Defendant's purported "legal basis" for such action appears to be drawn from the skeleton provided by a form for *pro se* litigants and does not contain any legal authority, even where the form calls for it.[16] Defendant's second motion is addressed in Section II.B.

---

[11] *See generally* Mot. to Dispute Debt Arising from an Adhesion Contract (D.I. 5).

[12] *Id.* at ¶ 4.

[13] Mot. for Full Audit to Verify Sources of Funds Used in Loan ¶ 1(b) (D.I. 5)

[14] *Id.* at ¶ 1(c).

[15] *Id.* at ¶ 2(b).

[16] The section of Defendant's second motion entitled "legal basis" reads, in its entirety, and without any alterations by the Court: "a. The Court has the authority to order a full audit under [cite relevant legal authority, rule, or statute in your jurisdiction, e.g., Rule X of the [State or Federal Rules of Civil Procedure]]. b. An audit is a fair and reasonable method to ascertain the legitimacy of financial transactions, as recognized in similar cases such as [cite any relevant case law, if applicable]." *Id.* at ¶ 3.

Defendant's third motion states that "Defendant has requested specific documents and evidence from the Plaintiff to verify how and where the funds where [sic] earned and/or received that where [sic] loaned to the Defendant, but these requests have not been fulfilled."[17] The documents and records Defendant seeks are those that might "i. Verify the legitimacy of financial transactions related to the claims; ii. Establish the authenticity of the agreement(s) and terms at issue; [and] iii. Clarify the source and use of funds involved in the transaction(s)."[18] Defendant does not otherwise specify what documents she wishes Plaintiff to turn over.[19] As with Defendant's second motion, Defendant does not identify a specific rule under which the motion is brought.[20] However, she does assert that "[d]iscovery rules mandate the production of relevant, non-privileged documents that are material to the claims and defenses of the parties."[21] Plaintiff counters that Defendant "has not propounded any discovery requests in accordance with the rules" and is "essentially seeking an order . . . compelling Plaintiff to respond to discovery that does not exist."[22] Section II.C. will address Defendant's third motion.

---

[17] Mot. for Writ of Produc. to Produc. Evid. ¶ 1 (D.I. 5).

[18] *Id.* at ¶ 2.

[19] The section of Defendant's third motion entitled "relief sought" reads, in its entirety, and without any alterations by the Court: "WHEREFORE, Defendant respectfully requests that this Court: 1. Issue a Writ of Production requiring the Plaintiff to produce the following evidence within [specific time frame, e.g., 30 days] of the Court's order: a. [Specific evidence, e.g., copies of financial records, account statements, loan agreements, communications, etc.]; b. [Additional evidence or records as necessary]; c. Any other related documents necessary to verify the claims and defenses in this case. 2. Require Plaintiff to submit an affidavit of certification confirming the completeness and accuracy of the produced evidence. 3. Grant any other relief this Court deems just and proper." *Id.* at ¶ 4.

[20] *Id.* at ¶ 3.

[21] *Id.*

[22] Pl.'s Resp. to Mot. for Writ of Produc. to Produc. Evid. ¶ 6 (D.I. 7).

## II.   ANALYSIS

### A. Defendant's Motion To Dismiss Lacks Merit And Does Not Justify The Relief She Seeks.

#### 1. Standard of Review

In a mortgage foreclosure action, the burden is on the mortgagor to establish why the property should not be seized and sold to pay the note.[23] The only defenses that a defendant may assert are payment, satisfaction, or a plea in avoidance of the deed.[24] All other defenses are not properly raised.[25]

Although Defendant does not cite any Superior Court Civil Rule justifying the relief she seeks, the Court will treat her request to dismiss the Complaint as a pre-answer motion to dismiss for failure to state a claim under Rule 12(b)(6).[26] In this light, Defendant's motion fundamentally misunderstands the procedural posture of this case. Defendant appears to believe that Plaintiff's Complaint was required to rule out every possible defense she might raise. Defendant is incorrect. On a motion to dismiss, the movant bears the burden.[27] In this procedural posture, Delaware courts are generous to plaintiffs' complaints:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party

---

[23] *McCafferty v. Wells Fargo Bank, N.A.*, 105 A.3d 989, 2014 WL 7010781, at *2 (Del. Dec. 8, 2014) (ORDER) (citing 10 *Del. C.* § 3901); *accord Mott v. Bank of New York Mellon*, 220 A.3d 245, 2019 WL 4879841, at *2 (Del. Oct. 2, 2019) (ORDER).

[24] *MidFirst Bank v. Mullane*, 2023 WL 5663252, at *2 (Del. Super. Aug. 31, 2023) (citing, *inter alia*, *Shrewsbury v. The Bank of New York Mellon*, 160 A.3d 471, 475 (Del. 2017)).

[25] *McCafferty*, 2014 WL 7010781, at *2 (citing *Harmon v. Wilmington Tr. Co.*, 663 A.2d 487, 1995 WL 379214 (Del. June 19, 1995) (ORDER)).

[26] *Accord Lakeview Loan Servicing, LLC v. Green-Hall*, 2024 WL 4533514, at *1 (Del. Super. Oct. 21, 2024) (citing *Freedom Mortg. Corp. v. Rayfield*, 2023 WL 2134977, at *1 (Del. Super. Feb. 17, 2023)); *Lakeview Loan Servicing, LLC v. Roark*, 2023 WL 2808438, at *2 (Del. Super. Apr. 6, 2023) ("Because, [sic] [Defendant] does not identify a rationale for dismissal under Rule 12, the Court . . . defaults to Rule 12(b)(6).").

[27] *Roundpoint Mortg. Servicing Corp. v. Hubert-Toussaint*, 2019 WL 4740959, at *2 (Del. Super. Sept. 26, 2019) (citation omitted).

notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[28]

Defendant's position is further weakened by the fact that her motion rests on affirmative defenses. Namely, Defendant claims unconscionability,[29] lack or failure of consideration,[30] and violation of public policy.[31] As all of these affirmative defenses relate to the validity of the underlying mortgage agreement, they are cognizable by this Court as pleas in avoidance.[32] Simply because Defendant may raise these defenses, however, does not mean that Plaintiff was obligated to rebut them in the Complaint, nor that the Court must order dismissal. The party asserting an affirmative defense bears the burden of proving that defense.[33] Moreover:

Because the Court generally is limited to the facts appearing on the face of the pleadings in ruling on a motion to dismiss, affirmative defenses

---

[28] *Id.* (quoting *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[29] *Jeffery v. Seven Seventeen Corp.*, 461 A.2d 1009, 1011 (Del. 1983) ("Unconscionability is an affirmative defense[.]"); *Standard Gen. L.P. v. Charney*, 2017 WL 6498063 (Del. Ch. Dec. 19, 2017), *aff'd*, 195 A.3d 16, 2018 WL 4571589 (Del. Sept. 24, 2018) (TABLE) ("Charney advances the affirmative defense of unconscionability in his answer."); *accord BAC Home Loans Servicing v. Brooks*, 2012 WL 1405703, at *3 & n.10 (Del. Super. Feb. 3, 2012).

[30] Super. Ct. Civ. R. 8(c).

[31] *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674, 676–77 (Del. 2024) ("Only a 'strong showing that dishonoring [a] contract is required to vindicate a public policy interest even stronger than freedom of contract' will induce our courts to ignore unambiguous contractual undertakings." (quoting *ev3, Inc. v. Lesh*, 103 A.3d 179, 181 n.3 (Del. 2014) (alteration in original))).

[32] "A plea in avoidance challenges the validity of 'the original mortgage sued upon.'" *Wilmington Sav. Fund Soc'y, FSB as Tr. for Fin. of Am. Structured Sec. Acquisition Tr. 2018-HB1 v. Bailey*, 2023 WL 107393, at *1 (Del. Super. Jan. 4, 2023) (quoting *LaSalle Nat'l Bank v. Ingram*, 2005 WL 1284049, at *1 (Del. Super. May 19, 2005)); *accord Blagg v. HB2 Alt. Holdings, LLC*, 2024 WL 4836715, at *5 (Del. Super. Nov. 20, 2024) (quoting *Wells Fargo Bank, NA v. Nickel*, 2011 WL 6000787, at *2 (Del. Super. Nov. 18, 2011)). Examples of valid pleas include "act of God, duress, exception or proviso of statute, forfeiture, fraud, illegality of transaction, nonperformance of condition precedent, ratification, unjust enrichment and waiver." *Shrewsbury*, 160 A.3d at 475 (citing *Gordy v. Preform Bldg. Components, Inc.*, 310 A.2d 893, 895–96 (Del. Super. 1973)).

[33] *Paragon Metal Holdings, LLC v. Smith*, 2025 WL 524265, at *10 (Del. Super. Jan. 28, 2025) (citing *NHB Advisors, Inc. v. Monroe Cap. LLC*, 2013 WL 6906234, at *2 (Del. Ch. Dec. 27, 2013)).

. . . are not ordinarily well-suited to disposition on such a motion.

Thus, unless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate.[34]

Defendant fails to plead any facts suggesting that her affirmative defenses have any merit, much less that Plaintiff "can prove no set of facts to avoid" them. Indeed, the final claim that Defendant raises—that Plaintiff failed to provide various documentation required of it under federal and state law—is squarely contradicted by the exhibits accompanying the Complaint, at least viewing the facts in the light most favorable to the non-movant. For these reasons—explained fully later in this opinion—the Court will not dismiss the Complaint.

### 2. Defendant Has Alleged No Facts Suggesting That Either The Note Or Mortgage Is Unconscionable

Defendant asserts that her mortgage is both procedurally and substantively unconscionable. Neither assertion holds up under scrutiny. Defendant's claims are conclusory, lack any supporting facts, and are substantially undercut by her inability to point to any objectionable term in either the mortgage or note. The Court is also mindful that "[u]nconscionability is a concept that is used sparingly[.]"[35] Because "'[u]pholding freedom of contract is a fundamental policy of this state . . . Delaware courts invoke 'this doctrine with extreme reluctance[.]'"[36] Defendant's motion does nothing to overcome this reluctance. "In order to find an agreement unconscionable, Delaware courts must find what amounts to *both* substantive and procedural

---

[34] *Andor Pharm., LLC v. Lannett Co., Inc.*, 2024 WL 1855112, at *11 (Del. Super. Apr. 29, 2024) (quoting *Perlman v. Vox Media, Inc.*, 2015 WL 5724838, at *12 (Del. Ch. Sept. 30, 2015)).

[35] *Waters v. Delaware Moving and Storage, Inc.*, 300 A.3d 1, 27 (Del. Super. 2023) (quoting *Olga J. Nowak Irrevocable Tr. v. Voya Fin., Inc.*, 2020 WL 7181368, at *10 (Del. Super. Nov. 30, 2020)).

[36] *Id.* (quoting *Change Cap. Partners I, LLC v. Volt Elec. Sys., LLC*, 2018 WL 1635006, at *4 (Del. Super. Apr. 3, 2018); *Voya Financial*, 2020 WL 7181368, at *10).

unconscionability."[37]   Plaintiff's motion does little to evidence either form of unconscionability, much less incline the Court to believe that dismissal of the Complaint is warranted.

### i.      Procedural unconscionability

In evaluating procedural unconscionability, Courts look at the "relative bargaining strength of the parties and whether the weaker party could make a meaningful choice" to accept or reject a contract.[38]   Applying this approach, the Court is not persuaded by Defendant's position.

To suggest that the mortgage is procedurally unconscionable, Defendant asserts that it is a contract of adhesion.  Contracts of adhesion, however, are not *per se* unconscionable.[39]   A contract of adhesion is merely a "printed form or boilerplate contract[] drawn skillfully by the party in the strongest economic position, which establish[es] industry wide standards offered on a take it or leave it basis to the party in a weaker economic position."[40]   Although the use of such a contract is a *factor* supporting a claim of procedural unconscionability,[41] it is not *dispositive* of such claims.  Indeed, as the Court of Chancery has observed, contracts of adhesion are often beneficial to a functioning economy and society.[42]   It would benefit neither the

---

[37] *Charney*, 2017 WL 6498063, at *17 (citing *James v. Nat'l Fin., LLC*, 132 A.3d 799, 812 (Del. Ch. Mar. 14, 2016)) (emphasis supplied).

[38] *Talkdesk, Inc. v. DM Trans, LLC*, 2024 WL 2799307, at *8 (Del. Super. May 31, 2024) (quoting *Chemours Co. v. DowDuPont Inc.*, 2020 WL 1527783, at *12 (Del. Ch. Mar. 30, 2020)).

[39] *James* 132 A.3d at 832 (citing Restatement (Second) of Contracts § 208, Reporter's Note, cmt. a (Am. L. Inst. 1981)).

[40] *Id.* (quoting *Fritz v. Nationwide Mut. Ins. Co.*, 1990 WL 186448, at *4 (Del. Ch. Nov. 26, 1990)).

[41] *Talkdesk*, 2024 WL 2799307, at *8 (noting that factors supporting procedural unconscionability include "(1) '[i]nequality of bargaining or economic power;' (2) '[e]xploitation of the underprivileged, unsophisticated, uneducated, and illiterate;' (3) '[t]he use of [adhesion contracts];' and (4) '[t]he circumstances surrounding the execution of the contract, including its commercial setting, its purpose, and actual effect.'" (quoting *James*, 132 A.3d at 826) (some alterations in original)).

[42] *James*, 132 A.3d at 832 ("Standardization of agreements serves many of the same functions as standardization of goods and services; both are essential to a system of mass production and distribution.  Scarce and costly time and skill can be devoted to a class of transactions rather than

powerful nor the less-than-powerful to declare that contracts of adhesion are always unenforceable; such a precedent would only increase drafting and litigation costs, and thereby limit (as a relevant example) the availability of credit to lower-income, less sophisticated parties.[43]

In any event, the mortgage agreement in this case is at least arguably not a contract of adhesion, because it was not drafted by the lender. Plaintiff argues that the mortgage is a run-of-the-mill Fair Housing Act loan, utilizing a form approved by the federal Department of Housing and Urban Development.[44] One of the principal risks of contracts of adhesion, and one of the reasons that courts will sometimes look at them askance, is that sophisticated drafters may employ practices like "minute print [and] unintelligible legalese" to confound less-sophisticated parties and thereby benefit themselves.[45] Accepting Plaintiff's representations for the purposes of Defendant's motion, these concerns are not implicated here: a contract not drafted by either party (and approved by a neutral regulator) does not afford either party the opportunity to employ the sorts of tricks just described. Even if a contract of adhesion were inherently unconscionable, therefore, Plaintiff has a plausible argument that the one at issue here is not such a contract. Such a dispute precludes dismissal on this ground, even accepting Defendant's legal premises.

Other than the existence of a contract of adhesion, the only assertion Defendant makes to support her procedural unconscionability claim is that she was "not afforded a meaningful opportunity to review, negotiate, or understand the terms, creating an imbalance of bargaining power in favor of the Plaintiff."[46] Defendant's

---

to the details of individual transactions . . . . Operations are simplified and costs reduced, to the advantage of all concerned." (quoting Restatement (Second) of Contracts § 211, cmt. a)).

[43] *Id.*

[44] Pl.'s Resp. to Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 5 (D.I. 8).

[45] *Waters*, 300 A.3d at 27.

[46] Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 2(A) (D.I. 5).

claims in this regard are conclusory, and therefore are insufficient to carry her burden on an affirmative defense.[47]  Regardless, nothing in Defendant's motion suggests that Plaintiff will be *unable* to provide evidence that Defendant was given an opportunity to review, negotiate, and understand the terms of her mortgage.[48]  In other words, Defendant's argument is scarcely so irrebuttable that it supports dismissal.

### ii.    Substantive unconscionability

"Traditionally, a contract will be found [substantively] unconscionable where 'no man in his senses and not under delusion would make . . . and . . . no honest or fair man would accept'" such a contract.[49]  It is far from clear that Defendant's mortgage is such a contract, and her arguments to that effect do not support the dismissal she seeks.  Defendant's argument reads, in its entirety, and without alteration, as follows:

> The terms of the adhesion contract are oppressive, one-sided, and excessively favor the Plaintiff.  Specifically:
>
> 1. The [specific term, e.g. interest rate, fees, or penalties] is disproportionate and unreasonable.

---

[47] *Cf. Wellgistics, LLC v. Welgo, Inc.*, 2024 WL 113967, at *8 (Del. Super. Jan. 9, 2024) (granting motion to strike affirmative defense because "[w]hile pleadings are to be concise and direct, to be legally sufficient, an affirmative defense must provide some factual support for the assertion of the defense."); *Nat'l Amusements, Inc. v. Endurance Am. Specialty Ins. Co.*, 2023 WL 3145914, at *8 (Del. Super. Apr. 28, 2023) (noting that "[t]he standard for a motion to strike an affirmative defense is similar to the Rule 12(b)(6) standard" governing motions to dismiss for failure to state a claim) (citing *Nichols v. Chrysler Grp. LLC*, 2010 WL 5549048, at *5 (Del. Ch. Dec. 29, 2010)); *White v. Panic*, 783 A.2d 543, 549 (Del. 2001) ("At the motion to dismiss stage . . . [p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences.") (internal quotation and citation omitted).

[48] To the contrary, even at this early stage, Plaintiff has indicated that Defendant was represented by a Delaware licensed attorney when she closed on the purchase of her home and entered into the mortgage.  Pl.'s Resp. to Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 5 (D.I. 8).

[49] *Reserves Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, 86 A.3d 1119, 2014 WL 823407, at *9 (Del. Feb. 28, 2014) (ORDER) (quoting *Tulowitzki v. Atl. Richfield Co.*, 396 A.2d 956 (Del. 1978)).

2. [Include other examples of unfair terms, e.g., hidden fees, vague clauses, or penalties disproportionate to the alleged breach.]

These terms unjustly enrich the Plaintiff and impose an undue burden on the Defendant.[50]

Defendant's motion appears to excerpt language from some form or other document prepared for the benefit of *pro se* litigants—into which Defendant failed to insert any details from her own case. As a consequence, and just as with Defendant's procedural unconscionability claim, all that Defendant has provided the Court is a series of unsupported legal conclusions. Defendant cannot expect the Court to deem her mortgage unconscionable as a matter of law when she cannot point to a single objectionable provision thereof.[51]

### 3. Defendant's Vague Claim That Her Mortgage Lacked Consideration Does Not Justify Dismissing Plaintiff's Complaint

Defendant's argument that her mortgage lacked "valid" consideration is meritless. "Consideration is a foundational requirement for any contract and contracts are generally unenforceable without it."[52] A defendant claiming that a contract lacks consideration has a difficult case to make, however, because any bargained-for "benefit to a promisor or a detriment to a promisee suffices."[53] Defendant has failed to prove conclusively, as required, that she received no benefit and her lender suffered no detriment from the challenged mortgage. Indeed, it is not even clear from Defendant's filings whether she alleges that no consideration was specified by the terms of the note and mortgage (a lack of consideration) or that no consideration was delivered to her despite terms calling for it (a failure of

---

[50] Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 2(B) (D.I. 5).

[51] *Accord Talkdesk,* 2024 WL 2799307, at *7 (rejecting an unconscionability argument because the relevant party "failed to indicate what portions of the Agreement [were] unconscionable.").

[52] *Blagg*, 2024 WL 4836715, at *7 (citing *James J. Gory Mech. Contracting, Inc. v. BPG Residential Partners V, LLC*, 2011 WL 6935279, at *2 (Del. Ch. Dec. 30, 2011)).

[53] *Id.* (quoting *Rudnitsky v. Rudnitsky*, 2000 WL 1724234, at *7 (Del. Ch. Nov. 14, 2000)).

consideration).

As elsewhere, Defendant misapprehends the burden placed on Plaintiff at this stage of the litigation. Defendant's full argument on the issue of consideration is as follows: "The Plaintiff has not demonstrated that valid consideration was provided in exchanged for the alleged agreement. Without valid consideration, the contract cannot form the basis of a valid debt claim."[54] This argument gets the standard precisely backwards. Because Defendant is raising an affirmative defense, it is *her* burden to prove that consideration was *absent*. Moreover, for the Court to dismiss Plaintiff's complaint on this basis, the Court must be persuaded that Plaintiff is *incapable* of proving valid consideration. The Court is not persuaded. To the contrary, the Court notes that Plaintiff attached a copy of Defendant's mortgage to the Complaint.[55] Under the mortgage, Defendant received consideration in the form of a $159,645.00 loan. Drawing the inference that said loan funds were paid out, they constituted both a benefit to Defendant and a detriment to her lender.

### 4. Defendant Fails To Identify A Theory By Which Enforcement Of Her Mortgage Would Violate Public Policy, And Freedom Of Contract Strongly Militates Against Her Position

Under Delaware common law, contracts that offend public policy are void.[56] Delaware courts, however, "hold freedom of contract in high—some might say, reverential—regard."[57] "When parties have ordered their affairs voluntarily through a binding contract, Delaware law is strongly inclined to respect their agreement, and will only interfere upon a strong showing that dishonoring the contract is required to vindicate a public policy interest even stronger than freedom of contract."[58] Such

---

[54] Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 2(C) (D.I. 5).
[55] Compl. Ex. F (D.I. 1).
[56] *Lincoln Nat'l Life Ins. Co. v. Joseph Schlander 2006 Ins. Tr.*, 28 A.3d 436, 441 (Del. 2011).
[57] *Ainslie*, 312 A.3d at 676.
[58] *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 566 (Del. Ch. 2023) (quoting *Libeau v. Fox*, 880 A.2d 1049, 1056 (Del. Ch. 2005), *aff'd in relevant part*, 892 A.2d 1068 (Del. 2006)); *accord Ainslie*, 312 A.3d at 677.

interests "are not to be lightly found,"[59] and "[q]uestions of public policy are best left to the legislature[.]"[60]

Defendant does not make the strong showing required of her. Defendant states that "[t]he alleged adhesion contract contains terms that violate public policy by" and then copies and pastes large sections of the United States Code without further explanation.[61] Some of the quoted language (for instance, a code provision criminalizing false statements to the United States Congress)[62] is self-evidently inapplicable. None of the quoted language comes close to establishing (without Defendant citing any supporting facts or explaining her legal theory) that enforcement of Defendant's mortgage would violate a public policy of this state.

### 5. Defendant's "Lack of Documentation" Argument Does Not Preclude Foreclosure Because Her Factual Claims Are Contested

Defendant states that "Plaintiff has failed to provide sufficient evidence to validate the alleged debt, including a copy of the original agreement, an itemized account statement, and proof of compliance with applicable consumer protection laws, such as the Fair Debt Collection Practices Act (15 U.S.C. § 1692g)."[63] Interpreting the facts in the light most favorable to the non-movant, as required on a motion to dismiss, Defendant is simply mistaken. Along with the Complaint, Plaintiff did include, among other things, copies of both the note and mortgage,[64] a sworn, itemized statement of the amounts due and owing,[65] and a copy of the notice

---

[59] *Rich*, 295 A.3d at 566 (quoting *Libeau*, 880 A.2d at 1056–57).
[60] *Stemberg v. Nanticoke Mem'l Hosp., Inc.*, 62 A.3d 1212, 1217 (Del. 2013)).
[61] Specifically, Defendant quotes 18 U.S.C. § 1001; 18 U.S.C. § 1961; 15 U.S.C. § 1962e; and 15 U.S.C. § 78ff.
[62] *See* 18 U.S.C. § 1001(b)(1)–(2).
[63] Mot. to Dispute Debt Arising from an Adhesion Contract ¶ 3 (D.I. 5).
[64] Compl. Exs. E, F (D.I. 1).
[65] *Id.* at Ex. H.

required by Section 1692g(a) of the Fair Debt Collection Practices Act.[66] Thus, the Court need not, and does not, decide whether failure to provide any of the documentation Plaintiff mentions would be a valid defense to foreclosure.

### B. Defendant Has Provided No Grounds To Justify An Audit Of Plaintiff's Funding Sources

Defendant's second motion, calling for an audit of Plaintiff, must be denied. Defendant does not cite any authority for the premise that the Court may order an audit of Plaintiff under these circumstances; consequently, the Court will apply general discovery principles to Defendant's motion. In light of those principles, Defendant's motion is deficient. The Court is deeply skeptical that an audit would yield any evidence relevant to Plaintiff's claim or to any defense that Defendant could mount. To the extent that such an audit would yield relevant information, an audit would almost certainly be unduly burdensome to Plaintiff given the simple nature and narrow scope of this foreclosure action.

Defendant fails to make an argument that the information she seeks through an audit is discoverable. "Although 'the scope of discovery is broad,' it is 'not limitless.'"[67] In general, discovery must be relevant to a claim or defense of one of the parties.[68] The Court is also empowered to limit discovery when it is unduly burdensome or expensive, taking into account, among other things, the needs of the case.[69] In short, the application of the discovery rules is subject to the Court's discretion.[70]

---

[66] *Id.* at Ex. I.

[67] *Boatright v. State Farm Ins. Co.*, 2023 WL 8234528, at *3 (Del. Super. Nov. 28, 2023) (quoting *In re Tyson Foods, Inc.*, 2007 WL 2685011, at *3 (Del. Ch. Sept. 11, 2007)).

[68] Super. Ct. Civ. R. 26(b)(1); *Boatright*, 2023 WL 8234528, at *4 ("In Delaware, 'the scope of document discovery must be limited to only the production of documents relevant to the subject matter that is being litigated between the parties.'" (quoting *Hiller v. Sedgwick Claims Mgmt. Servs., Inc.*, 2023 WL 107389, at *2 (Del. Super. Jan. 4, 2023))).

[69] Super Ct. Civ. R. 26(b)(1)(iii).

[70] *Boatright*, 2023 WL 8234528, at *3 (quoting *Mann v. Oppenheimer & Co.*, 517 A.2d 1056,

The Court may deny discovery where "the information sought [would] have no possible bearing on the subject matter of the action."[71]  This is such an instance. Generally, a party seeking discovery bears only a minimal burden, in that the party must explain why the information sought is relevant.[72]  Ordinarily, this burden falls on the movant only after the party opposing production objects and the movant files a motion to compel—but here, it appears that Defendant is attempting to short-circuit the process by filing her motion before either the request or objection.  However, rather than requiring what would be a futile process (a formal request by Defendant, an inevitable objection by Plaintiff, and a second motion by Defendant), the Court simply holds that Defendant's claimed defense is not a valid one and that, therefore, the justification she proffers for seeking an audit is likewise invalid.  Any information she gleaned from an audit would all but certainly be irrelevant, and the Court will not allow discovery to devolve into a fishing expedition.[73]

Defendant's suggestion that the the money lent to her was not "lawfully earned" is not relevant to this action.  It has no bearing on whether Defendant is required to make payments under her mortgage or whether Plaintiff may foreclose given her failure to do so.  To the extent that it is discernible, Defendant's argument appears to relate vague allegations of illegality to her defense that the mortgage is unenforceable on public policy grounds.  To be sure, "[i]t is a . . . principle of the common law that it will not lend its aid to enforce a contract to do an act that is illegal[.]"[74]  Paying Defendant's mortgage is not an illegal act, however, even if the

1061 (Del. 1986)).

[71] *Suburban Med. Servs. v. Brinton Manor Ctr.*, 2022 WL 17688194, at *4 (Del. Super. Dec. 15, 2022) (quoting *New Castle Cnty. v. Christiana Town Ctr., LLC*, 2004 WL 1835103, at *4 (Del. Ch. Aug. 16, 2004) (alteration in original)).

[72] *Boatright*, 2023 WL 8234528, at *3 (citing *In re Appraisal of Dole Food Co., Inc.*, 114 A.3d 541, 550 (Del. Ch. 2014); *Henlopen Hotel, Inc. v. United Nat'l Ins. Co.*, 2019 WL 3384843, at *1 (Del. Super. July 26, 2019)).

[73] *Id.* (noting that it is this Court's duty to avoid such an outcome) (citations omitted).

[74] *Stemberg*, 62 A.3d at 1217.

Court (implausibly) assumed that Plaintiff were a criminal syndicate lending stolen funds to borrowers like and including Defendant.

Setting aside the legal issues with Defendant's position, it is plain that, as a factual matter, *Plaintiff is not the entity that loaned Defendant the funds*. As is evident from the note and mortgage at issue, Defendant borrowed from "American Neighborhood Mortgage Acceptance Company LLC," not from Plaintiff.[75] Plaintiff is merely seeking enforcement as the *current* holder of the note and mortgage, not as the original lender.[76] Since Plaintiff did not provide the funds loaned to Defendant, an audit of Plaintiff's books would presumably do nothing to illuminate the source of those funds. In other words, not only is evidence of the source of the funds irrelevant to this action, but the information Defendant seeks is likely irrelevant to the question of the source of the funds.

Cementing the Court's judgment in this regard, the Delaware Supreme Court has expressed justified reluctance to expand the documentation required for, and litigation costs associated with, routine foreclosures.[77] If this Court permitted defenses like Plaintiff's, supported by only innuendo of impropriety, to justify ordering sweeping and expensive discovery from loan servicers, the costs associated with foreclosures—and therefore, with mortgages—would increase due to lengthy litigation. Delaware courts' treatment of mortgage foreclosure actions (including the limitation of available defenses to payment, satisfaction, and avoidance) and the statutory scheme the General Assembly has adopted (e.g., placing the burden of persuasion on foreclosure defendants rather than plaintiffs) evince a public policy in

---

[75] Compl. Exs. E, F (D.I. 1).

[76] *Id.* at Ex. G (assignment of mortgage).

[77] *See, e.g.*, *Shrewsbury*, 160 A.3d at 478 (emphasizing that the Court's decision did not impose "new pleading requirements which must be contained in a mortgage foreclosure complaint"); *id.* at 481 (Strine, C.J., dissenting) (criticizing the majority for placing an additional burden on the party seeking foreclosure).

favor of expediting foreclosures, rather than drawing them out over the course of years.

### C. Defendant's Motion To Compel Discovery Is Procedurally Improper

Defendant's third motion must also be denied.  Other than noting that "[d]iscovery rules mandate the production of relevant, non-privileged documents that are material to the claims and defenses of the parties," Defendant does not provide any legal basis for her motion.  The Court is not aware of any precedent for a common law "writ of production," and Defendant cites none.  However, Defendant does refer to the "discovery rules," and, though not explicitly citing it, paraphrases the general scope of discovery pursuant to Superior Court Civil Rule 26(b)(1).[78] Like Plaintiff, the Court therefore interprets Defendant's motion as a standard motion to compel discovery under Superior Court Rule 37, which is the filing through which this Court ordinarily resolves disputes about document production.[79]

Applying Rule 37, Defendant's motion is deficient.  "[W]hat is often overlooked with such motions is that Superior Court Rule 37(e)(1) requires that each . . . motion to compel have attached a certification of efforts made to get discovery compliance *prior to* filing the motion."[80]  In the absence of such certification, no motion may be filed with or accepted by the Prothonotary, much less considered by this Court.[81]  Defendant filed no certification, and has otherwise done nothing to evidence any  efforts to resolve the purported discovery dispute.  The Court cannot know whether the parties attempted in good faith to resolve such discovery dispute

---

[78] *See* Super. Ct. Civ. R. 26(b)(1) ("In general. -- parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . .").

[79] *See Boatright*, 2023 WL 8234528, at *2–3 (generally describing the procedures and standards for discovery requests and objections).

[80] *Tsakalas v. Hicks*, 2013 WL 749317, at *5 (Del. Super. Feb. 22, 2013) (emphasis in original).

[81] Super. Ct. Civ. R. 37(e)(1).

absent some showing of such efforts, and a certification is the orderly process by which Defendant was required to make her showing under the discovery rules. Litigants' efforts to independently resolve discovery disputes are important because submitting a motion to the Court should not be any party's first resort. "Discovery is intended to be a cooperative and self-regulating process, and cooperation and communication among the parties are essential during discovery."[82] A more permissive rule, which did not require evidence of such cooperation, would lead to a debilitated and inefficient court system overwhelmed by the necessity of ruling on endless discovery issues. There is no different set of rules for *pro se* litigants, and the Court "should not sacrifice the orderly and efficient administration of justice to accommodate" them.[83]

The lack of specificity in Defendant's description of her initial request also militates against granting her motion. In evaluating a motion to compel, the Court "determines whether the discovery sought is reasonably calculated to lead to admissible, non-privileged evidence."[84] Here, although Defendant states that she requested "specific documents," she does not specify what documents were requested, but only what she hoped to prove by that request. The Court cannot exercise its discretion over discovery in a judicious manner without a meaningful understanding of the underlying facts. This is a particular concern here, because, for

---

[82] *Hartree Nat. Gas Storage, LLC v. PAA Nat. Gas Storage, L.P.*, 2023 WL 3914900, at *1 (Del. Super. June 8, 2023) (quoting *Serviz, Inc. v. ServiceMaster Co., LLC*, 2021 WL 5768655, at *6 n.59 (Del. Super. Dec. 6, 2021)).

[83] *Draper v. Med. Ctr. of Delaware*, 767 A.2d 796, 799 (Del. 2001) (per curiam). Nor can the Court's sympathy for the difficulties faced by *pro se* litigants "impair the substantive rights of represented parties to save [*pro se* litigants'] claims when their claims plainly have no merit." *Mikkilenini v. PayPal, Inc.*, 2021 WL 2763903, at *5 (Del. Super. July 1, 2021) (cleaned up, internal quotation and citation omitted).

[84] *Hunter v. Bogia*, 2015 WL 5050648, at *2 (Del. Super. July 29, 2015) (citing Del. Super. Ct. Civ. R. 26(b)(1); *Alberta Sec. Comm'n v. Ryckman*, 2015 WL 2265473, at *9 (Del. Super. May 5, 2015)).

the reasons previously given, the Court would likely narrow or deny any motion to compel documents about the source of loan funds given their lack of relevance to this proceeding.

## III. CONCLUSION

For the foregoing reasons, Defendant's "Motion to Dispute Debt Arising from an Adhesion Contract" is **DENIED;** Defendant's "Motion for Full Audit to Certify Sources of Funds Used in Loan" is **DENIED;** and Defendant's "Motion for Writ of Production to Produce Evidence" is **DENIED.** Consistent with Superior Court Civil Rule 12(a)(1), Defendant shall file a responsive pleading to Plaintiff's Complaint within 10 days after notice of this opinion and order.

**IT IS SO ORDERED.**

_____
Noel Eason Primos, Judge

NEP/tls

*Via File & ServeXpress and U.S. Mail*

oc: Prothonotary

cc: Counsel of Record *(Via File & ServeXpress)*
Heather M. Stevens, *Pro Se (Via U.S. Mail)*

20